22 F.3d 839
 Michael QUALLS, By and Through Annie QUALLS, his
Conservator; Annie Qualls, individually,
Plaintiffs-Appellants,
v.
BLUE CROSS OF CALIFORNIA, INC.; Saddleback R.V. Sales, a
California corporation, Defendants-Appellees.
 No. 92-56033.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 31, 1994.
Memorandum Filed Feb. 9, 1994.
Order and Opinion April 26, 1994.
 
 Melissa J. Fassett, Morgan, Wenzel & McNicholas, Los Angeles, CA, for plaintiffs-appellants.
 David A. Lingenbrink, Galton & Helm, Los Angeles, CA, for defendants-appellees.
 Before: TANG, PREGERSON, and NOONAN, Circuit Judges.
 
 
 1
 Appeal from the United States District Court for the Central District of California.
 
 ORDER
 
 2
 The memorandum disposition filed February 9, 1994, is redesignated as an authored opinion by Judge Harry Pregerson.
 
 OPINION
 PREGERSON, Circuit Judge:
 I. INTRODUCTION
 
 3
 Michael Qualls appeals the district court order of summary judgment in favor of defendant-respondent Blue Cross of California ("Blue Cross"). We have jurisdiction under 28 U.S.C. Sec. 1291. We AFFIRM.
 
 II. BACKGROUND
 
 4
 Mr. Qualls was electrocuted by a faulty electric fan in June of 1988, causing him to lapse into a coma that lasted several weeks, and to suffer permanent brain damage. This and other injuries kept him hospitalized for six months, and Mr. Qualls continues to require home nursing care.
 
 
 5
 At the time of his accident, he was covered by a small group health insurance policy ("Policy") issued by Blue Cross to his employer, Saddleback RV Sales ("Saddleback"). The Policy was fully funded by Saddleback, and was provided automatically without cost to all full-time employees after 90 days of employment.
 
 
 6
 Blue Cross paid Mr. Qualls's medical bills until he and Blue Cross jointly reached a settlement agreement with the electric fan manufacturer in December of 1990. Under the settlement agreement, the manufacturer paid a total of $7.5 million in return for discharge and release from liability arising from the accident. Out of the $7.5 million, $3.8 million was allocated to an annuity for Mr. Qualls's "total care" for the next 30 years. Another $286,402 of the $7.5 million went to Blue Cross to extinguish the lien it had acquired on the settlement under Section Seven AA of the Policy. After the settlement agreement, Mr. Qualls continued to pay premiums due under the policy, but Blue Cross refused to pay any further benefits arising out of the electric fan injury.[1]
 
 
 7
 To justify its decision not to pay further benefits resulting from the injury, Blue Cross relied on Section Seven AA of the policy which excluded coverage for
 
 
 8
 [a]ny illness, injury or other condition for which a third party may be liable or legally responsible by reason of negligence, an intentional act or breach of any legal obligation on the part of such third party. Nevertheless, Blue Cross will advance the benefits of this Agreement to the Member subject to the following: ... Blue Cross will automatically have a lien, to the extent of benefits advanced, upon any recovery, whether by settlement, judgment or otherwise, that the Member receives from the third party
 
 
 9
 ....
 
 
 10
 Annie Qualls, as Michael Qualls's guardian ad litem, filed the instant action to enforce his rights under the Blue Cross policy. On his behalf, she pleaded causes of action based on tortious breach of the covenant of good faith and fair dealing, breach of contract, violation of various state codes, and equitable estoppel. Blue Cross moved for summary judgment and the court granted Blue Cross's motion.[2]
 
 
 11
 In granting summary judgment, the district court found that Mr. Qualls's state law claims were preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1001 et seq. It found further that the terms of the Policy unequivocally limit Blue Cross's contractual liability for injuries caused by third party negligence to advancements in anticipation of payments by the third party. Therefore, once Mr. Qualls received payments from the manufacturer, Blue Cross was relieved of further obligation for injury related costs. The district court order did not make any explicit findings on Mr. Qualls's final claim, that Blue Cross was equitably estopped from refusing to provide further benefits.
 
 III. DISCUSSION
 
 12
 We review a grant of summary judgment de novo. Smith v. Noonan, 992 F.2d 987, 989 (9th Cir.1993). We must determine whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law. Botefur v. City of Eagle Point, 7 F.3d 152, 154 (9th Cir.1993).
 
 
 13
 Mr. Qualls makes three primary claims of error: (1) He disputes the district court's characterization of the Policy as an ERISA employee benefit plan subject to federal rather than state law; (2) He argues that the district court misread the terms of the Policy; and (3) He reasserts his claim based on collateral estoppel. None of these claims has merit.
 
 
 14
 A. Was evidence sufficient to find that Mr. Qualls's policy
 
 
 15
 was a "qualified retirement plan" under ERISA?
 
 
 16
 Both Mr. Qualls and Blue Cross agree that Mr. Qualls's state law claims are preempted if the Saddleback insurance policy was subject to ERISA. ERISA preempts claims based on state laws that "relate to any employee benefit plan."[3] 29 U.S.C. Sec. 1144(a). Mr. Qualls argues, first, that the Saddleback insurance policy was not an "employee benefit plan," and therefore was not subject to ERISA. Second, he argues that the court entered summary judgment against him before he had an opportunity to conduct adequate discovery to demonstrate that the policy was not within ERISA.
 
 
 17
 (1)
 
 
 18
 ERISA defines an "employee benefit plan" to include, among others, "any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance ... medical, surgical, or hospital care or benefits...." 29 U.S.C. Secs. 1002(1), (3). The parties do not dispute that the Blue Cross policy was established for the purpose of providing health insurance to its participants. But Mr. Qualls does argue that the policy was not a "plan," and that it was not "maintained by an employer."[4]
 
 
 19
 (a) "Plan"
 
 
 20
 There is no doubt that the Blue Cross Group Benefit Agreement at issue here created a "plan." Mr. Qualls cites Port Halifax Packing Company v. Coyne, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), to support his argument that the Blue Cross group insurance policy was a "benefit" but not an ERISA "plan." The distinction drawn in Halifax is between a mere benefit, such as the simple payment of a sum of money, and a plan, which requires some supervision or ongoing administration. But the Blue Cross agreement clearly falls within the bare requirements for an ERISA plan provided by Halifax. The agreement created a complex ongoing relationship between the insureds and the insurer which required constant administrative attention by the insurer. See Id. at 10-15, 107 S.Ct. at 2217-19 (discussing some of the elements distinguishing a plan from a mere benefit).
 
 
 21
 (b) "Maintained by an employer"
 
 
 22
 The Department of Labor has issued so-called "safe harbor" regulations distinguishing those plans "established or maintained by an employer" from those in which the employer's role is more limited. See 29 U.S.C. Sec. 1002(1); 29 CFR Sec. 2510.3-1(j). These regulations describe the circumstances under which a group insurance plan offered by an insurer to employees will not qualify as an ERISA employee benefit plan. 29 CFR Sec. 2510.3-1(j). Specifically, the regulations exclude those plans in which: (1) No contributions are made by the employer; (2) Employee participation is completely voluntary; (3) "The sole functions of the employer ... are, without endorsing the program, to permit the insurer to publicize the program to employees ... to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer;" and (4) The employer receives no consideration for its limited involvement in the plan. Id.
 
 
 23
 Unless all four of the above requirements are met, the employer's involvement in a group insurance plan is significant enough to constitute an "employee benefit plan" subject to ERISA. Kanne v. Connecticut General Life Insurance, 867 F.2d 489, 492 (9th Cir.1988) (state law claims against insurer preempted by ERISA where only one of the above mentioned conditions was not met; the failure of any one of the conditions "would prevent the exclusion of the insurance plan from ERISA coverage"), cert. denied, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). In the case at bar, at least two of these regulatory requirements for exclusion from ERISA were not met by the Blue Cross policy. First, there were employer contributions. In fact, as Mr. Qualls concedes, the plan was fully funded by Saddleback's contributions. Second, because coverage was free and automatic for all full-time employees, it was not "completely voluntary." Therefore, the Blue Cross policy failed to satisfy the first two requirements for exclusion from ERISA. It follows that Saddleback's involvement in the Blue Cross plan was sufficient to create an "employee benefit plan" subject to ERISA, and the district court was correct to hold that Mr. Qualls's state law claims were preempted.
 
 
 24
 (2)
 
 
 25
 Mr. Qualls's attorney filed a Rule 56(f) declaration in district court prior to the summary judgment order requesting additional time for discovery. In the declaration, the attorney alleged that she needed additional discovery in order "to establish beyond question that the group health insurance policy purchased for Saddleback and its employees was not a 'qualified retirement plan' [meaning, we assume, an "employee benefit plan"] under ERISA, but was simply the purchase of an insurance policy and nothing more." ER at Exh. 7, p. 6. Specifically, she alleged: that Blue Cross had failed to produce correspondence between Blue Cross and Saddleback that would establish the circumstances of the creation of Mr. Qualls's policy; that additional depositions were needed to uncover these circumstances; and that Blue Cross had not yet responded to certain interrogatories served approximately three weeks prior to the declaration that would also shed light on the same issue. ER at Exh. 7, pp. 4-6.
 
 
 26
 Federal Rule of Civil Procedure 56(f) provides that if a party opposing summary judgment demonstrates inability "for reasons stated [to] present by affidavit facts essential to justify the party's opposition," the court may deny the motion for summary judgment or continue the hearing to allow additional discovery, or "make such other order as is just."
 
 
 27
 We review for abuse of discretion a district court's decision not to permit further discovery. Ashton-Tate v. Ross, 916 F.2d 516, 519 (9th Cir.1990). We will only find that the district court abused its discretion if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment. California Union Ins. v. American Diversified Savings Bank, 914 F.2d 1271, 1278 (9th Cir.1990), cert. denied, 498 U.S. 1088, 111 S.Ct. 966, 112 L.Ed.2d 1052 (1991). Still, if the trial judge fails to address the motion before granting summary judgment, we review this omission de novo. Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518-1519 (9th Cir.1987).
 
 
 28
 In the case at bar, the judge never formally responded to Mr. Qualls's request for additional discovery. But the decision on the Rule 56(f) request need not be explicitly stated. See Columbia Pictures Industries v. Professional Real Estate Investors, 944 F.2d 1525, 1532-1533 (9th Cir.1991) (District Judge implicitly ruled that the materials sought would not defeat defendant's motion for summary judgment), aff'd, --- U.S. ----, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Critically, the information sought by Mr. Qualls's attorney would not have shed light on any of the issues upon which the summary judgment decision was based. As discussed above, that decision was predicated on the fact that the policy was paid for by Saddleback and that it was provided automatically to Saddleback employees. The additional requested discovery, on the other hand, was intended to elicit the circumstances of the creation of the policy. Therefore, the additional discovery would not have precluded summary judgment and was properly denied.
 
 
 29
 B. Liability for injuries due to third party negligence.
 
 
 30
 Mr. Qualls claims that the district court misread the Blue Cross policy when it found that the settlement agreement between Mr. Qualls and the electric fan manufacturer extinguished Blue Cross's responsibility to pay for further medical care related to the injury. The relevant portion of the policy, quoted supra at 842, excluded coverage for injuries caused by third party tortfeasors. But it promised to "advance the benefits of this Agreement" subject to a lien on any recovery from the third party "to the extent of the benefits advanced." ER Exhibit 1 at 23. The district court correctly interpreted this passage to obligate Blue Cross to advance benefits only to the extent that it retained a lien against payments by the third party. Order at 3. Once settlement was reached with the third party, there were no benefits to "advance," and consequently Blue Cross's obligation ceased. The district court noted that the settlement agreement with the electric fan manufacturer satisfied Blue Cross's lien and released the manufacturer from liability, and concluded that Blue Cross had no further obligation to provide benefits.
 
 
 31
 Mr. Qualls's contentions on this issue miss their mark. He argues that case law prevents Blue Cross from asserting a lien on the settlement for payment of future benefits due under the policy. He also argues that the contract does not authorize such a lien on benefits after settlement with the third party tortfeasor. But the summary judgment order was not based on any such lien on the settlement for payment of benefits subsequent to the settlement. Rather, it was based on the language of the policy excluding Blue Cross altogether from liability for injuries due to third party negligence, other than payments advanced in anticipation of recovery from that third party. Therefore, it is irrelevant whether, as Mr. Qualls asserts, California case law permits an insured to recover both from a third party tortfeasor and from the insurance company that provides coverage for the same injuries. Nothing in the cases cited by Mr. Qualls prohibits an insurance company from excluding coverage for injuries resulting from third party tortious acts.
 
 
 32
 It is also irrelevant whether, as Mr. Qualls asserts, the Blue Cross policy limits Blue Cross to recovery from the Qualls of the amounts it advanced prior to the settlement. And it is irrelevant whether Blue Cross "waived any future lien rights by executing a release of claims" in the settlement agreement. Blue Cross is not seeking a recovery from Mr. Qualls, and the summary judgment order does not grant any future lien rights. Rather, Blue Cross is seeking to avoid paying benefits that are specifically excluded from coverage by the policy. As the district court found, the policy unambiguously entitled Blue Cross to do so.
 
 
 33
 Finally, in his reply brief, Mr. Qualls contends that the language excluding Blue Cross from liability for injuries resulting from third party tortious acts "no longer appl[ies]" once both the insurer and insured have released the third party from liability. Grey brief at 5. This argument relies for its force on the conditional language of the policy exclusion for any injury "for which a third party may be liable or legally responsible." Section Seven AA (emphasis added). Mr. Qualls argues that once the settlement was reached there was no longer any basis for holding the third party liable, so that the terms of the exclusion no longer exist.
 
 
 34
 Mr. Qualls's interpretation reads the contract backwards. The contract excludes Blue Cross from liability for injuries tortiously caused by third parties, and provides an exception for benefits which will be advanced in anticipation of possible future recovery. Once recovery has been made, the conditions of the exception no longer exist and the exclusion remains. In other words, since the policy excluded benefits for which a third party may have been responsible, it clearly also excluded benefits which a third party had already paid to the insured.
 
 
 35
 C. Equitable Estoppel.
 
 
 36
 Mr. Qualls alleged in his complaint that Blue Cross misled him into believing that coverage would continue after the settlement, and should therefore be equitably estopped from failing to pay benefits arising from the injury after the settlement. Record on Appeal at 54-56. This claim was not separately addressed by the district court in the summary judgment order. A review of the record on appeal demonstrates that Mr. Qualls's claim is meritless.
 
 
 37
 ERISA preempts state equitable estoppel claims but a party may assert a federal equitable estoppel claim in an ERISA action. Greany v. Western Farm Bureau, 973 F.2d 812 (9th Cir.1992). ERISA equitable estoppel is limited to situations where the wronged party can prove (a) the provisions of the plan at issue are ambiguous, and (b) oral representations interpreting the plan were made to the employee. Id. In the present case, Mr. Qualls presented no evidence to the district court that Blue Cross made any representations to him that coverage for his injuries would continue after the case settled. Nor did Qualls present any evidence that he relied on any such representations to his detriment.
 
 
 38
 Although in his reply brief Mr. Qualls refers to "an entire prior course of conduct in which Blue Cross and its employees represented to Mrs. Qualls that medical benefits would be provided to her husband as long as those benefits were medically necessary," he has never provided any evidence that Blue Cross ever said it would pay for medical care after a third party agreed to pay for such care, or that Mr. Qualls ever relied on any such statements. In his complaint, Mr. Qualls merely alleged that Blue Cross failed to inform him that it would not pay the benefits. That would not be enough to satisfy the ERISA equitable estoppel requirements. In addition, Blue Cross points out that Mrs. Qualls stated during her deposition that she did not believe Blue Cross would continue paying benefits once a settlement was reached with the fan manufacturer. Even if, as Mr. Qualls alleges, prior representations were made by Blue Cross, it would be unreasonable for Mrs. Qualls to rely on such representations if she no longer believed them to be true.
 
 IV. ATTORNEY'S FEES
 
 39
 Blue Cross requests attorney's fees under ERISA 29 U.S.C. Sec. 1132(g)(1) and under Rule 38 of the Federal Rules of Appellate Procedure. We do not regard this appeal as frivolous as required by Rule 38, and we decline to exercise our discretion to award fees under ERISA.
 
 
 40
 AFFIRMED.
 
 
 
 [1]
 Mr. Qualls elected to continue coverage of his Blue Cross policy after he stopped working for Saddleback. Blue Cross characterizes this continuing coverage as "COBRA continuation benefits," referring to eligibility mandated by 29 U.S.C. Secs. 1161-1167, although continuation coverage was not mandated by COBRA for companies with less than 20 employees. 29 U.S.C. Sec. 1162
 
 
 [2]
 Mr. Qualls argues that Blue Cross's reply to its opposition to summary judgment was not filed according to the time limits imposed by the local rules. This argument was considered and rejected by the district court. District courts have broad discretion to interpret their local rules. Frigard v. United States, 862 F.2d 201, 202 (9th Cir.1988). "Only in rare cases will we question the exercise of discretion in connection with the application of the local rules." United States v. Warren, 601 F.2d 471, 473 (9th Cir.1979). This is not such a rare case
 
 
 [3]
 Laws that regulate insurance are not preempted by ERISA. See 29 U.S.C. Sec. 1144(b). This exception is not relevant here because Mr. Qualls does not allege that his claims are based on laws that regulate insurance
 
 
 [4]
 Mr. Qualls also argues, in his reply brief, that the policy was not covered by ERISA because once he was no longer employed at Saddleback his continued coverage was based on a simple private policy, unrelated to employment. He bases this argument on the fact that Blue Cross was not obligated by COBRA to allow him to continue providing him with coverage under the policy. See 29 U.S.C. Sec. 1162 (continuing coverage requirement limited to plans with more than 20 members). This argument fails to take note of the fact that Mr. Qualls's continuing eligibility was based solely on his previous employment at Saddleback. If the policy was governed by ERISA when he was at Saddleback, it continued to be governed by ERISA once he left. See Tingey v. Pixley-Richards West, 953 F.2d 1124, 1132-1133 (9th Cir.1992) (converted insurance policies continue to be governed by ERISA)