Barbara WAKS, Plaintiff–Appellant,

v.

**EMPIRE BLUE CROSS/BLUE SHIELD, a New York corporation, and Does 1 through 30, inclusive, Defendant–Appellee.**

No. 99–17437.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 2001

Filed Aug. 20, 2001

Steven J. Parsons, Las Vegas, Nevada, for the appellant.

Mark J. Lenz, Bible, Hooy & Trachok, Reno, Nevada, for the appellee.

Before: BEEZER, O'SCANNLAIN and W. FLETCHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge:

Barbara Waks appeals the district court's summary judgment in favor of defendant Empire Blue Cross / Blue Shield ("Empire") in this diversity action. Waks asserts state-law claims based on allegations that Empire improperly refused to make payments under Waks' individual insurance policy. The district court granted summary judgment to Empire on the ground that the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"), preempted Waks' claims.

Although Waks was initially insured under a group plan subject to ERISA regula-

tion, her claims are based on Empire's conduct after she had converted her group coverage to an individual policy. We must determine whether ERISA preempts state-law claims brought under that individual insurance policy. We conclude that it does not. An individual insurance policy is not subject to ERISA solely because it was created through the conversion of a group policy that was subject to ERISA. We therefore reverse the district court's summary judgment and remand for further proceedings.

I

Waks initially obtained insurance coverage from Empire under an ERISA-regulated group insurance plan covering employees of her husband's company, SCS Systems ("SCS"). When SCS ceased operations, Waks applied for individual coverage with Empire pursuant to the conversion rights of the group policy. Empire issued Waks a "TraditionPLUS" individual policy for comprehensive hospital and medical benefits effective February 2, 1993.

In June of 1996, Empire authorized Waks' emergency admission to the Sunrise Hospital Medical Center based on her physician's determination that Waks had a life-threatening condition. She was suffering from pain, nausea, vomiting, severe disorientation, and spiking temperatures. Her past medical history included cancer, orthopedic surgeries, and a gallbladder disorder. Empire subsequently denied Waks' insurance claim for the hospital costs, and denied her appeal. Empire's denials contained no reference of any kind to ERISA.

Waks filed a complaint in federal district court alleging state-law claims of breach of contract, breach of the covenant of good faith and fair dealing, and breach of statutory duties. She sought damages for Empire's failure to provide benefits under the insurance policy and for mental and emotional distress and punitive damages. Empire defended on the ground that Waks' converted policy was subject to ERISA and that her state-law claims were therefore preempted. The district court agreed.

We review a summary judgment de novo. *See Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 816 (9th Cir.1992). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See id.* ERISA preemption is a question of law. *See id.*

II

This court has never squarely decided whether ERISA preemption extends to state-law claims arising under an individual insurance policy that has been converted from an earlier group policy subject to ERISA. Because other cases have used varying vocabularies, we first explain several terms to avoid confusion. In this opinion, we refer to an employee benefits plan subject to ERISA regulation as an "ERISA plan." We refer to an insurance policy that is part of an ERISA-regulated employee benefits plan, such as the SCS group plan in which Waks participated, as a "group policy." We refer to the legal right to convert from a group policy that is part of an ERISA plan to an individual policy as a "conversion right." Finally, we refer to an individual insurance policy obtained by exercising a conversion right, such as Waks' TraditionPLUS policy, as a "converted policy" or an "individual policy."

In determining the reach of ERISA preemption, "the purpose of Con-

gress is the ultimate touchstone." *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 8, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). We determine Congress' purpose by examining the statute's language and its structure and purpose. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

■ Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

Section 514(a) provides, in sum, that "[i]f a state law 'relate[s] to ... employee benefit plan[s],' it is pre-empted." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The "plan" distinction is important, for "ERISA's preemption provision does not refer to state laws relating to 'employee benefits,' but to state laws relating to 'employee benefit *plans.*'" *Fort Halifax,* 482 U.S. at 7, 107 S.Ct. 2211 (emphasis in original). Although the Supreme Court stated that the words "relate to" were to be construed expansively, it tempered this statement by emphasizing that there was no support for reading the word "plan" out of the statute. *Id.* at 8, 107 S.Ct. 2211; *see also Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. 478 (explaining that "only state laws that relate to benefit *plans* are pre-empted") (emphasis in original).

■ The first question is therefore whether "the conver[ted] policy is itself subject to ERISA regulation as an ERISA plan." *Demars v. CIGNA Corp.,* 173 F.3d 443, 445 (1st Cir.1999). The answer is straightforward. An employee benefit plan must cover at least one employee to constitute an ERISA benefit plan. *See Peterson v. Am. Life & Health Ins. Co.,* 48 F.3d 404, 407 (9th Cir.1995). Waks' converted policy covered her as an individual and not as an employee of SCS or of any other employer. Her converted policy is therefore not itself an ERISA plan.

■ The second question is whether Waks' state-law claims are so related to an ERISA plan that they are preempted. Recognizing the difficulty in construing the words "relate to" from § 514(a), the Supreme Court has instructed that the "objectives of" the statute serve as a guide to the reach of ERISA preemption. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The Court has stressed two central objectives of ERISA regulation: protection of employee interests, and administrative ease for employers. *See, e.g., Ingersoll–Rand,* 498 U.S. at 137, 142, 111 S.Ct. 478. Both interests are protected by ERISA's preemption provision through its maintenance of uniformity in standards and requirements. *See N.Y. State Conf.,* 514 U.S. at 657, 115 S.Ct. 1671 (stating that the basic purpose of preemption is to "avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans"); *Ingersoll–Rand,* 498 U.S. at 142, 111 S.Ct. 478 (noting that purpose of preemption is to avoid conflicting standards applicable to the same employer conduct); *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9–10, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (explaining that preemption prevents an employer's administrative scheme from being subjected to conflicting requirements).

■ We conclude that claims arising under a converted individual policy are not "related to" an ERISA plan for purposes of ERISA preemption. This conclusion is

consistent not only with the words but also the purposes of the statute. A converted policy is created when an ERISA plan participant leaves the plan and obtains a new, separate, individual policy based on conversion rights contained in the ERISA plan. The contract under the converted policy is directly between the insurer and insured. It is independent of the ERISA plan and does not place any burdens on the plan administrator or the plan. There are also no relevant administrative actions by the employer. *See Fort Halifax,* 482 U.S. at 16, 107 S.Ct. 2211 ("It would make no sense for pre-emption to clear the way for exclusive federal regulation, for there would be nothing to regulate.").

 Indeed, in this case ERISA pre-emption would be an absurd result because there is no ERISA plan and no administrator. SCS ceased operations years ago, and the ERISA plan was terminated at that time. State law therefore cannot impose conflicting requirements on any employer or ERISA plan administrator. However, we would reach the same result in this case even if the SCS plan still existed. Whenever an individual has exercised her right to convert from a group policy under an ERISA plan to an individual policy, the new policy is no longer regulated by ERISA, and state-law claims under that policy are not preempted by ERISA.

There are dicta in our earlier case law that erroneously suggest that converted policies remain subject to ERISA after the conversion. For example, in *Peterson,* 48 F.3d at 408, we stated, "We have held repeatedly that, because [converted] policies are derived from ERISA plans, they continue to be governed by ERISA even after conversion." *Id.* (citing *Qualls v. Blue Cross of Cal., Inc.,* 22 F.3d 839, 843 n. 4 (9th Cir.1994); *Greany v. W. Farm Bureau Life Ins. Co.,* 973 F.2d 812, 817 (9th Cir.1992); and *Tingey v. Pixley–Richards West, Inc.,* 953 F.2d 1124, 1132–33 (9th

Cir.1992)). But this statement (and others like it) must be read in light of the facts to which they were applied.

None of the four cases just cited involved state-law claims brought under converted policies. In *Peterson,* the health policy at issue had previously covered two business partners and their employee, but it covered only the plaintiff partner at the time of the claim. We held that the partner's policy continued to be part of an ERISA plan after the covered employee, whose participation had rendered the plan subject to ERISA, was transferred to another policy. *Peterson,* 48 F.3d at 408. The policy, which was one component of an employer-sponsored benefit plan, was part of an ERISA plan, and remained so after the transfer of the employee. *See id.* at 407–08. We did not have a converted policy before us and did not hold that a converted policy continues to be subject to ERISA.

*Peterson* cited *Qualls* for the proposition that the Ninth Circuit had repeatedly held that converted policies are subject to ERISA. However, *Qualls* did not involve a converted policy, either. Qualls elected to continue participation in the employer-sponsored health plan by making payments to the insurer after leaving employment due to an injury. The insurer treated the policy as conferring continuation benefits mandated by the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161 et seq. ("COBRA"). *See Qualls,* 22 F.3d at 842 n. 1. Qualls contended that his post-employment coverage was not subject to ERISA because the extension of his coverage was not required by COBRA (as his employer had fewer than 20 employees) and was, instead, a simple private policy. In rejecting this contention, we stated that Qualls' eligibility for the policy was based solely on his previous employment. We cited our

still-earlier decision in *Tingey* for the proposition that "converted insurance policies continue to be governed by ERISA." *Id.* at 843 n. 4. But Qualls did not have a converted policy; rather, he had "continuation coverage" because he continued to participate in the employer's ERISA plan by paying the premiums himself. *Id.* at 841.

In *Tingey*, the plaintiff alleged that his insurer had refused to permit him to convert his ERISA plan after he was wrongfully terminated. *See* 953 F.2d at 1127. Tingey's state-law claims were based on rights to convert from an ERISA plan to an individual policy, not on rights provided by a policy that had already been converted. We thus did not hold in *Tingey* that a converted policy was covered by ERISA. Rather, we held that the conversion right provided by the ERISA plan was covered by ERISA. *Id.* at 1132–33.

Finally in *Greany*, the plaintiff had changed jobs and was in the process of converting his insurance coverage from the ERISA plan provided by his former employer. His insurer mistakenly provided him with an incorrect termination date for the ERISA plan's coverage. The plaintiff's wife went into premature labor prior to the incorrect date, but after the date the coverage actually terminated. The plaintiff was able to obtain benefits under a converted policy, as well as under a separate policy obtained in connection with his new job. The total amount paid under these two policies, however, was insufficient to cover the plaintiff's total cost. *See* 973 F.2d at 814–15. He brought suit under state law to recover the balance from his prior employer's ERISA plan, arguing that the employer was negligent in providing an inadequate conversion benefit. We concluded that because the prior employer's ERISA plan "provides the conversion benefit" whose scope was in question, "the individual conversion benefits are part of the ERISA plan and are thus governed by ERISA." *Id.* at 817; *see also* 29 U.S.C. § 1162(5) (providing that ERISA plans must provide "qualified beneficiar[ies] the option of enrollment under a conversion health plan ..."). Like our decision in *Tingey*, *Greany* held only that the conversion right, not the converted policy, was subject to ERISA.

Unlike the claims in *Peterson*, *Qualls*, *Tingey*, and *Greany*, Waks' claims are neither claims brought under an ERISA plan nor claims for conversion rights under such a plan. Rather, Waks' claims are brought under her converted individual policy. We have repeatedly held that rights under an ERISA plan and rights relevant to the process of converting from an ERISA plan are preempted by ERISA, but we have never held that a claim arising under a converted policy is preempted. Today, we hold that state-law claims arising under a converted policy-even though the policy has been converted from an ERISA plan-are not preempted by ERISA.

Our holding accords with the recent decision of the First Circuit in *Demars v. CIGNA Corp.*, 173 F.3d 443 (1st Cir.1999). *Demars* carefully distinguishes between the right to convert from an ERISA plan to a converted policy, which is covered by ERISA, and the converted policy itself, which is not. *See id.* at 445 n. 1, 448. *Demars* persuasively explains that ERISA preemption applies neither to converted policies generally, nor to specific types of converted policies. *See id.* at 449–50. It also explains (as we have done above) that our decision in *Greany* cannot properly be cited for the proposition that converted policies themselves are subject to ERISA. *See id.* at 448–49.

Empire relies on five out-of-circuit cases for the proposition that state-law claims under a converted policy are preempted by

ERISA. Only one of the cases so holds. *See Painter v. Golden Rule Ins. Co.*, 121 F.3d 436, 440–41 (8th Cir.1997) (holding state-law claims preempted because the conversion policy at issue "came into being as a result of [the plaintiff] exercising her right under the group policy to obtain [the conversion policy]"). None of the other cases holds that ERISA preempts state-law claims brought under a converted policy.

In *White v. Provident Life & Accident Co.*, 114 F.3d 26 (4th Cir.1997), the plaintiff was a former employee who was mistakenly permitted to convert his policy. He filed suit after the insurer discovered the mistake, returned White's premiums, and required return of the converted policy. The Fourth Circuit held that because "White's claims are clearly related to the conditions placed by the group policy on the right of conversion, his claims must be governed by ERISA." *Id.* at 28. White's claims were preempted because they involved the "right of conversion to an individual policy," *id.*, not because the conversion policy itself was subject to ERISA. In *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341 (11th Cir.1994), the plaintiff was a former employee who argued that his life insurance policy was not subject to ERISA because he had converted it. The Eleventh Circuit held that the conversion "did not actually create an individual policy" because the coverage was part of a policy covering former employees still affiliated with the employer. *Id.* at 1346. In *Howard v. Gleason Corp.*, 901 F.2d 1154 (2d Cir.1990), the plaintiff argued that the employer had violated a state law requiring notice of conversion rights. The Second Circuit concluded that ERISA preempted the state-law claim because ERISA sets forth "obligations of the same general type," and because the right at issue was the right to convert, which is clearly covered by ERISA. *Id.* at 1157–58. Finally, in *Massachusetts Casualty*

*Ins. Co. v. Reynolds*, 113 F.3d 1450 (6th Cir.1997), the Sixth Circuit held that the plaintiff's post-employment coverage was not "conversion" coverage. *Reynolds* did not decide whether a true converted policy is subject to ERISA. Rather, *Reynolds* analogized the plaintiff's policy to continuation coverage, because after he left employment the plaintiff kept the same policy for which the employer had previously paid but paid the premiums himself. *See id.* at 1453.

Thus, despite Empire's contention to the contrary, the First Circuit's decision in *Demars* squarely conflicts with only the holding of the Eighth Circuit in *Painter*. We are thus faced with an even split between two circuits. For the reasons given above, we agree with the decision of the First Circuit in *Demars*.

### III

We hold that ERISA does not preempt Waks' state-law claims arising under her converted individual policy with Empire. We reverse the district court's order granting summary judgment to Empire and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**