**Carl David OWENS, Plaintiff,**

v.

**UNUM LIFE INSURANCE
COMPANY, Defendant.**

**No. 1:03–CV–79.**

United States District Court,
E.D. Texas,
Beaumont Division.

Oct. 6, 2003.

---

**74.** The Court will contact the parties by tele-
phone in early October so that the trial in this
cause can be rescheduled.

Shimon Kaplan of Lone Star Legal Aid, Beaumont, TX, for Plaintiffs.

Douglas Kent Butler and Melissa Ann Mitchell of Figari, Davenport & Graves, LLP, Dallas, TX, for Defendants.

### *MEMORANDUM AND ORDER*

CLARK, District Judge.

Carl Owens sued UNUM Life Insurance Company for benefits under a conversion disability policy he acquired after leaving his employer. Owens moved to strike UNUM's affirmative defense that Owens' state law claims are preempted by ERISA. The Fifth Circuit has not previously decided whether claims concerning such a conversion policy are preempted, and there is a split among other circuits. However, the conversion policy in question is not a defined ERISA plan. Owens' state law claims neither relate to an ERISA plan, nor implicate the statutory aims of ERISA. Therefore, this court concludes that Owens' state law claims are not preempted by federal law, and UNUM Life Insurance Company's affirmative defense of preemption must be stricken from its answer.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff Carl David Owens is a citizen of the State of Texas residing in the City of Orange, Texas. Defendant UNUM Life Insurance Company ("UNUM") is a corporation incorporated in the State of Maine with its principal place of business in the same state. Up to 1990, Owens' employer, Smith Barney, provided him a long-term disability insurance policy underwritten by UNUM. That same year, Owens left the employ of Smith Barney, but exercised his right under the policy to convert his employer provided long-term disability policy to an individual long-term disability policy

with UNUM. On May 8, 2001, approximately eleven years after he converted to an individual plan, Owens submitted a claim to UNUM for disability benefits in the amount of $1,800.00 per month. UNUM denied the claim.

Owens sued UNUM under a section of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover benefits allegedly due him under the plan, to enforce his rights under the terms of the plan, and to clarify his rights to future benefits under the terms of the plan. In the alternative, Owens alleged a state law claim for breach of contract. Owens initially alleged that this Court had federal question jurisdiction under 28 U.S.C. § 1331 because his claims were governed by ERISA. In the alternative, Owens alleged that this Court had diversity jurisdiction under 28 U.S.C. § 1332 because Owens is a citizen of Texas, UNUM is a citizen of Maine and the amount in controversy exceeded $75,000.00.

UNUM asserted as an affirmative defense that Owens' state law claim of breach of contract was preempted by ERISA, specifically, 29 U.S.C. § 1144(a). UNUM also counterclaimed for attorney's fees and costs pursuant to another section of ERISA, 29 U.S.C. § 1132(g). Owens moved under Fed.R.Civ.P. 12(f) to strike this affirmative defense and counterclaim.

## LAW AND DISCUSSION

### Standard of Review

■ Courts should be cautious in granting motions to strike affirmative defenses, particularly when a defendant may not have had ample opportunity to prove his allegations that the defense might succeed on the merits. However, dismissal under Fed.R.Civ.P. 12(f) is permitted if the defense asserted is invalid as a matter of law. *See Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d, 1045, 1057 (5th Cir.1982). What constitutes an invalid defense depends upon the nature of the claim for relief and the defense in question. *See Equal Employment Opportunity Comm'n v. First National Bank of Jackson,* 614 F.2d 1004, 1008 (5th Cir.1980), *citing,* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1381 at 719 (2d ed.1990).

If the determination of invalidity can be made at an early stage it will enable the parties to proceed with the litigation in the proper posture. *See Simpson, v. Alaska State Comm'n for Human Rights,* 423 F.Supp. 552, 554 (D.Alaska 1976). In this case, both Owens and UNUM have urged the Court to make a determination on the issue of ERISA preemption in order to establish their respective litigation and discovery strategies.

### The Issue to be Resolved

Owens suggests that subject matter jurisdiction over this action is lacking under 29 U.S.C. § 1132 but that this Court still has jurisdiction based on diversity of citizenship. *See* 28 U.S.C. § 1332(a). Owens further moves, pursuant to Fed.R.Civ.P. 12(f), to strike defendant's affirmative defense of preemption under 29 U.S.C. § 1144(a). For its part, UNUM agrees that this Court has diversity jurisdiction. However, UNUM disputes Owens' motion to strike and argues that plaintiff's state law claim for breach of contract is preempted by 29 U.S.C. § 1144(a).

As the parties do not dispute that this Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332, a conclusion supported by the diverse citizenship of the parties and the amount in controversy, whether this Court has subject matter jurisdiction pursuant to complete ERISA preemption under 29 U.S.C. § 1132 is moot. The sole issue for resolution is whether an individual insurance pol-

icy, that has been converted from an earlier group policy subject to ERISA, is still governed by ERISA pursuant to 29 U.S.C. § 1144(a).

### Do Owens' Claims "Relate to" an Employee Benefit Plan?

■ 29 U.S.C. § 1144(a) provides that if a state law "relate[s] to any employee benefit plan," it is preempted. While the Fifth Circuit Court of Appeals has not ruled on the precise issue regarding an individual conversion policy now before the Court, guidance is available from cases dealing with other policies and plans. Whether a particular plan qualifies as an ERISA plan depends on whether a plan (1) exists; that (2) meets the ERISA requirement of establishment or maintenance by an employer for the purpose of benefitting the plan participants; and (3) does not fall within the Department of Labor's "safe harbor" exclusion; *See McNeil v. Time Ins. Co.,* 205 F.3d 179, 189 (5th Cir.2000); *Meredith v. Time Ins. Co.,* 980 F.2d 352, 355 (5th Cir.1993).

■ The first part of the test is important because ERISA's preemption provision "does not refer to state laws relating to 'employee benefits,' but to state laws relating to 'employee benefit *plans.*'" *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 7, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987). While this language should be construed expansively, the word "plan" can not be ignored. *See Waks v. Empire Blue Cross/Blue Shield,* 263 F.3d 872, 875 (9th Cir.2001). Owens' policy only covered him as an individual, and he was not an employee of Smith Barney. His policy did not constitute an ERISA plan because it did not cover at least one employee. *See Waks,* 263 F.3d at 875.

■ The second part of the test is that the plan be established or maintained by an employer for the benefit of plan participants. Owens' policy is a contract between himself and UNUM. Smith Barney pays no premium and has no responsibility. While Smith Barney's plan allowed Owens to convert to the individual policy, that policy was not established by, nor is it maintained by Smith Barney.

The third part of the test, which is somewhat duplicative of parts one and two, is whether the policy is outside of the "safe harbor" provision. The Department of Labor exempts certain group or group-type insurance programs from ERISA regulation. *See* 29 C.F.R. § 2510.3–1(j) [1]; *McNeil,* 205 F.3d at 190. The Fifth Circuit, using this "safe harbor" test, has held that an insurance policy is not governed by ERISA where (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limit-

---

**1.** 29 C.F.R. § 2510.3–1(j) states that:

Certain group or group-type insurance programs. For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which (1) No contributions are made by an employer or employee organization; (2) Participation in the program is completely voluntary for employees or members; (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

ed to collecting premiums and remitting them to the insurer; and (4) the employer received no profit from the plan. *McNeil,* 205 F.3d at 190.

 In this case Owens paid the premiums on the conversion policy himself. Owens' decision to obtain the conversion policy and to pay the premiums was a voluntary choice on his part. No employer of Owens had any role in the administration of the conversion policy. No employer received any profit from the plan. As a result, the conversion policy in this case would fall within the safe harbor exclusion and would not be subject to ERISA. Thus, UNUM's affirmative defense of ERISA preemption is invalid since UNUM can not even establish that an ERISA plan, as defined by the Fifth Circuit and 29 C.F.R. § 2510.3–1(j), is at issue.

### Is There a Nexus Between Owens' Policy and the Goals of ERISA?

An alternative analysis can be made by evaluating "the nexus between the state law and ERISA, in view of ERISA's statutory objectives." *See Lewis v. Bank of America NA,* 343 F.3d 540 (5th Cir.2003). This was essentially the approach taken by the First Circuit in *Demars v. CIGNA Corp.,* 173 F.3d 443, 450 (1st Cir.1999), where the Court held that the plaintiff's conversion policy was not itself an "employee welfare benefit plan" and that the plaintiff's state law claims relating to the conversion policy are not preempted under 29 U.S.C. § 1144(a). The Court noted that Congress had two aims in passing ERISA:

1.) to safeguard employee interests by reducing the threat of abuse or mismanagement of employee benefit funds, *citing, Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 15, 107 S.Ct. 2211, 2219, 96 L.Ed.2d 1 (1987); and,

2.) at the same time to safeguard employer interests by eliminating "the

threat of conflicting and inconsistent State and local regulation" of employee benefit plans, *citing, New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 657, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995).

*Demars,* 173 F.3d at 446. The Court found that neither aim was "strongly implicated" in regard to a conversion policy. *Demars,* 173 F.3d at 446. There was little risk of abuse of an employee benefit fund since the employer had no ties to it. Further, the former employer had no continuing administrative and financial obligations regarding the conversion policy. Thus, the conversion policy was not an "employee welfare benefit plan" within the meaning 29 U.S.C. § 1002(1). Consequently, the Court held that plaintiff's state law claims were not preempted. *Demars,* 173 F.3d at 450.

The Ninth Circuit has also analyzed whether a plaintiff's state law claims under a conversion plan were so related to an ERISA plan that they were preempted. *See Waks v. Empire Blue Cross/Blue Shield,* 263 F.3d 872, 875 (9th Cir.2001). First, noting that the United States Supreme Court has instructed courts that the purpose of ERISA serves as a guide to the reach of its preemption, the *Waks* Court reiterated that the twin aims of ERISA are to safeguard employee interests by reducing the threat of abuse or mismanagement of employee benefit funds while at the same time safeguarding employer interests by eliminating the threat of conflicting and inconsistent State and local regulation of employee benefit plans. *Waks,* 263 F.3d at 875. With this purpose in mind, the Court concluded that claims arising under a converted individual policy are not "related to" an ERISA plan for purposes of ERISA preemption. *Waks,* 263 F.3d at 875. The Court reasoned:

A converted policy is created when an ERISA plan participant leaves the plan and obtains a new, separate, individual policy based on conversion rights contained in the ERISA plan. The contract under the converted policy is directly between the insurer and insured. It is independent of the ERISA plan and does not place any burdens on the plan administrator or the plan. There are also no relevant administrative actions by the employer. *See Fort Halifax,* 482 U.S. at 16, 107 S.Ct. at 2220 ("It would make no sense for preemption to clear the way for exclusive federal regulation, for there would be nothing to regulate.").

*Waks,* 263 F.3d at 876.

### Cases Favoring Preemption Distinguished

There are several decisions in other circuits which have held that State law claims under a conversion policy are preempted by ERISA.[2] However, as set out above, this Court concludes that application of the logic and analysis used by the Fifth Circuit Court of Appeals in similar cases results in a determination that Owens' claims are not preempted. Additionally, this Court agrees with the criticism of the cases finding preemption set out in *Demars v. CIG-NA Corp.,* 173 F.3d 443, 449–450 (1st Cir. 1999).

Typical of the cases finding preemption, is *Painter v. Golden Rule Ins. Co.,* 121 F.3d 436 (8th Cir.1997). There the Eighth Circuit Court of Appeals held that the right to a conversion policy was "part of the plan or program 'established' by [the employer] to provide medical benefits for its current and former employees. As

such, the conversion policy is a component of [the employer's] ERISA plan." *Painter,* 121 F.3d at 440. *Demars* correctly points out that the "relate to" language of § 1144(a) can not mean that every attenuated relationship gives rise to preemption. *Demars,* 173 F.3d 443, *citing, New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995) ("infinite relations cannot be the measure of preemption.").

The Sixth Circuit found a conversion policy was subject to ERISA by analogizing the conversion policy to one obtained under 29 U.S.C. § 1161, commonly known as "COBRA." *See Massachusetts Casualty Ins. Co. v. Reynolds,* 113 F.3d 1450, 1453 (6th Cir.1997); *comparing, Mimbs v. Commercial Life Ins. Co.,* 818 F.Supp. 1556 (S.D.Ga.1993). However, in the *Mimbs* case, because the COBRA policy was a statutorily required continuation of, and was tied to, the employers health plan, the twin aims of ERISA were implicated. This is not true of the conversion policy voluntarily acquired by Owens, a former employee, to which Smith Barney, his former employer has no financial or administrative tie. *See Demars,* 173 F.3d at 449.

### Conclusion

*McNeil's* requirement that a plan be established or maintained by an employer before it is subject to ERISA is echoed in the Ninth Circuit's *Waks* decision. The Fifth Circuit's exempting of an insurance policy that falls within a "safe harbor" criteria dovetails with the First Circuit's *Demars* analysis regarding conversion. This Court finds the reasoning of the First and Ninth Circuits more persuasive, and

---

**2.** This lawsuit is not over whether Owens has a right to convert under the terms of Smith Barney's ERISA plan. Owens converted to his individual policy eleven years before filing suit. He is now claiming benefits under the

individual policy he now has. Accordingly, cases deciding whether or not an employee can convert from an ERISA plan to an individual policy are not on point and will not be discussed. *See Demars,* 173 F.3d at 448.

more in line with Fifth Circuit rationale, than the analysis of the Circuits which have held that conversion policies are subject to ERISA.

Owens' converted policy covered him as an individual and Smith Barney had no ongoing administrative and financial ties to the UNUM conversion policy. There is no basis to find that the conversion policy is an employee welfare benefit plan within the meaning of ERISA, and it would not advance the purposes or goals of ERISA to find that the conversion policy is still governed by ERISA.

It is therefore **ORDERED** that the Motion to Strike Affirmative Defense (Doc. # 9) is hereby **GRANTED,** and the affirmative defense of ERISA preemption and the counterclaim for attorney's fees under ERISA are stricken from UNUM's Answer.