**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3114
No. 96-3454

_____

|  |  |  |
|---|---|---|
| Ana Painter, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Golden Rule Insurance Company, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted:  April 14, 1997
Filed:  August 14, 1997

_____

Before LOKEN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

LOKEN, Circuit Judge.

Ana Painter claimed health insurance benefits under a conversion policy issued by Golden Rule Insurance Company ("Golden Rule"). Golden Rule denied coverage on the ground that Painter's cancer treatments were experimental and not medically necessary. The resulting dispute has now spawned two appeals without resolving the

coverage question. In No. 96-3114, Painter appeals the district court's[1] dismissal of her state law claims for malicious prosecution and breach of fiduciary duty as preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* In No. 96-3454, Painter appeals the amount of attorney's fees awarded after Golden Rule's declaratory judgment action was dismissed because the parties had not exhausted their contractual remedies. We affirm both decisions.

## I. Background.

In 1991, Golden Rule paid Painter's claims for ovarian cancer medical treatments under a group policy purchased by her employer, M.D. Care, Inc. The group policy was part of an employee welfare benefit plan governed by ERISA. After Painter's cancer went into remission, she requested that the group policy cover high dose chemotherapy and peripheral stem cell infusion treatments. Golden Rule denied that request. Painter's employment with M.D. Care terminated in August 1992; her continuation coverage under the group policy terminated in February 1993, when M.D. Care canceled the group policy. At that point, Painter exercised her "health insurance conversion privilege" under the group policy and purchased an individual "Conversion Policy" from Golden Rule.[2]

---

[1]The HONORABLE GEORGE F. GUNN, JR., United States District Judge for the Eastern District of Missouri.

[2]The Consolidated Omnibus Budget Reconciliation Act of 1985 amended ERISA to require most sponsors of ERISA group health plans to provide "continuation coverage" upon termination of employment, see 29 U.S.C. §§ 1161-63, and to provide "the option of enrollment under a conversion health plan otherwise generally available [to employees] under the plan," § 1162(5). The parties assume that M.D. Care was required to provide Painter's continuation and conversion benefits. That assumption does not affect our resolution of the issues presented by these appeals. See Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1343-45 (11th Cir. 1994).

-2-

The First Lawsuit.  Painter then proceeded with high dose chemotherapy cancer treatment and submitted a claim for those expenses under the Conversion Policy.  Golden Rule denied coverage on the ground that this treatment was experimental and not medically necessary.  When Painter threatened to assert a variety of legal claims, Golden Rule commenced a declaratory judgment action in federal court, seeking a declaration that it is not obligated under the Conversion Policy to pay Painter's claims for these additional cancer treatments.  After Painter moved to dismiss on a variety of grounds, Golden Rule conceded that the parties had not exhausted the Conversion Policy's procedure for determining medical necessity.  The district court then dismissed the declaratory judgment action without prejudice, ordering Golden Rule to pay Painter's "reasonable attorney's fees and costs incurred in defending this action." Painter applied for an award of $102,619.75 in attorney's fees and now appeals the district court's award of $37,493.35 (our case No. 96-3454).

The Second Lawsuit.  In December 1995, without exhausting the Conversion Policy's medical necessity procedures, Painter commenced an action in state court, seeking compensatory and punitive damages under state law on the theory that Golden Rule's actions in denying coverage and commencing the declaratory judgment action constituted malicious prosecution and breach of fiduciary duty.  After Golden Rule removed the action, the district court granted Golden Rule's motion to dismiss, concluding that "a conversion policy obtained by an employee pursuant to an ERISA plan is within the scope of ERISA, and state law claims relating to the conversion policy are subject to ERISA's preemption provision." Painter appeals (our case No. 96-3114).  We review an ERISA preemption ruling *de novo*.  See Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc., 947 F.2d 1341, 1344 (8th Cir. 1991), cert. denied, 504 U.S. 957 (1992).

## II. No. 96-3114 -- The ERISA Preemption Issue.

Painter argues that ERISA does not preempt her state law claims because the Conversion Policy is an individual contract that does not implicate administration of M.D. Care's group health plan. After M.D. Care terminated the group policy, Golden Rule had no relationship with M.D. Care or its ERISA plan. Therefore, Painter concludes, her state law claims do not "relate to" M.D. Care's plan within the meaning of ERISA's express preemption provision, 29 U.S.C. § 1144(a), and those claims should avoid ERISA preemption like the malicious prosecution claim in Nill v. Essex Group, Inc., 844 F. Supp. 1313, 1318-20 (N.D. Ind. 1994).

The Supreme Court has decided sixteen ERISA preemption cases since the statute was enacted in 1974. See California Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A., Inc., 117 S. Ct. 832, 842-43 (1997) (Scalia, J., concurring). Most involved the proper scope of "relate to" preemption under § 1144(a), and the Court has struggled, particularly in its more recent decisions, with the inherent vagueness of that key statutory phrase. Compare New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 115 S. Ct. 1671, 1676-80 (1995), with Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985). However, some ERISA cases involve the distinct question of conflict preemption -- whether a state law is preempted because it conflicts with a specific portion of the complex ERISA statute. If there is a conflict, state law is preempted, *whether or not* "the statutory phrase 'relate to' provides further and additional support for the pre-emption claim." Boggs v. Boggs, 117 S. Ct. 1754, 1761 (1997). In our view, this is a case of conflict preemption.

To define the conflict between ERISA and Painter's state law claims, we must address an underlying legal issue -- if Golden Rule denies Painter's claim for medical benefits after the Conversion Policy's contractual remedies have been exhausted, would a suit by Painter for wrongful denial of benefits be governed by ERISA's remedial

-4-

provisions?  In Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 43 (1987), the Supreme Court held that ERISA remedies preempt "state common law tort and contract actions asserting improper processing of a claim for benefits under an insured employee benefit plan."  The Court explained:

> The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive.  This conclusion is fully confirmed by the legislative history of the civil enforcement provision.

Id. at 54.  See also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142-45 (1990); Kuhl v. Lincoln Nat'l Health Plan of Kansas City, 999 F.2d 298, 302-04 (8th Cir. 1993), cert. denied, 510 U.S. 1045 (1994). Thus, if ERISA provides Painter remedies for the wrongful denial of Conversion Policy benefits, then her state law claims for tortious mishandling of her benefit claim are conflict-preempted.

We conclude that Painter's claim for benefits under the Conversion Policy is governed by ERISA.  The issue turns on three statutory provisions.  First, the ERISA provision governing claims for plan benefits, 29 U.S.C. § 1132(a)(1)(B), provides that an ERISA "participant" may sue "to recover benefits due to him under the terms of his plan."  Second, the definition of "participant" in 29 U.S.C. § 1002(7) includes "any employee *or former employee* of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan."  (Emphasis added.)  In other words, a former employee such as Painter may be an ERISA participant entitled to sue for benefits under § 1132(a)(1)(B).

That leaves the question whether Painter's Conversion Policy benefits are "due [her] under the terms of [her] plan" within the meaning of § 1132(a)(1)(B).  ERISA defines an "employee welfare benefit plan," such as M.D. Care's group health plan, to

mean "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants . . . through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits." 29 U.S.C. § 1002(1). The group health policy M.D. Care purchased from Golden Rule either was itself an ERISA plan, or was part of a broader plan if M.D. Care's total plan or program included other components. A suit to recover benefits due Painter under that group policy, including continuation benefits due her as a former employee, would be governed by § 1132(a)(1)(B). Here, of course, the group policy has expired, and Painter is seeking medical benefits under Golden Rule's separate Conversion Policy. But the Conversion Policy came into being as a result of Painter exercising her right under the group policy to obtain this specific insurance policy. Thus, the right to a Conversion Policy was part of the plan or program "established" by M.D. Care to provide medical benefits for its current and former employees. As such, the Conversion Policy is a component of M.D. Care's ERISA plan. A suit to recover Conversion Policy benefits is governed by § 1132(a)(1)(B).

Because Painter's underlying claim for Conversion Policy benefits is governed by ERISA, her state law claims for Golden Rule's alleged mishandling of that claim are preempted under Pilot Life. This conclusion is consistent with the overwhelming majority of preemption decisions involving conversion policies and the ERISA plans which gave them birth. See Peterson v. American Life & Health Ins. Co., 48 F.3d 404, 407-08 (9th Cir.), cert. denied, 116 S. Ct. 377 (1995); Glass v. United of Omaha Life, 33 F.3d at 1346-47; Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 817 (9th Cir. 1992); Howard v. Gleason Corp., 901 F.2d 1154, 1157-58 (2d Cir. 1990); Reynolds v. Massachusetts Cas. Ins. Co., 900 F. Supp. 915, 922 (E.D. Tenn. 1995), rev'd on other grounds, 113 F.3d 1450 (6th Cir. 1997); Klosterman v. Western Gen. Mgmt., Inc., 805 F. Supp. 570, 573-74 (N.D. Ill. 1992); Beal v. Jefferson-Pilot Life Ins. Co., 798 F. Supp. 673, 677 (S.D. Ala. 1992); Nechero v. Provident Life & Accident Ins. Co., 795 F. Supp. 374, 379-80 (D.N.M. 1992); Mays v. Unum Life Ins. Co. of America, 1995 WL 317102, 3 (N.D. Ill. 1995); but see Mimbs v. Commercial Life Ins.

Co., 818 F. Supp. 1556, 1562-63 (S.D. Ga. 1993). The district court correctly concluded that ERISA preempts Painter's state law claims.

### III.   No . 96-3454 -- The Attorney Fee Issue.

When Golden Rule filed its declaratory judgment action, Painter moved to dismiss on many grounds, including (i) ERISA does not govern claims under the Conversion Policy, (ii) in any event, ERISA does not afford Golden Rule standing to seek a declaratory judgment construing the Conversion Policy,[3] and (iii) failure to exhaust the Policy's procedure for an independent determination of what is medically necessary.  Golden Rule promptly admitted lack of exhaustion and moved to stay or voluntarily dismiss its declaratory judgment action for this purpose.  Painter instead urged the court to dismiss for lack of subject matter jurisdiction.

After moving the case toward trial for one year, the district court referred the pending stay and dismissal motions to a magistrate judge, who recommended that the court (i) voluntarily dismiss the action under Fed. R. Civ. P. 41(a)(2) for failure to exhaust contract remedies, and (ii) order Golden Rule to pay Painter's reasonable costs and attorney fees because it had filed a premature declaratory judgment action.  The district court adopted that recommendation, granted Golden Rule's voluntary dismissal motion, dismissed the case without prejudice, and ordered Golden Rule to pay Painter's "reasonable attorney's fees and costs incurred in defending this action."  However, while the court's Order dismissed the action pursuant to Rule 41(a)(2), its accompanying Memorandum declared that it "lacks subject matter jurisdiction over this case, as applicable [contract] remedies have not been exhausted."

---

[3]Though this issue is not before us, we refer the interested reader to the thorough discussion and contrary conclusion in Connecticut Gen. Life Ins. Co. v. Cole, 821 F. Supp. 193, 196-98 (S.D.N.Y. 1993).

Counsel for Painter then applied for an award of $102,619.75 in attorney fees.  Golden Rule argued that the court had no power to award attorney fees after dismissing for lack of subject matter jurisdiction.  Recognizing its prior error, the court ruled that failure to exhaust contract remedies is not a jurisdictional defect depriving the court of power to condition voluntary dismissal on the payment of Painter's reasonable attorney fees.  After soliciting further billing information from Painter's attorneys, the court concluded that much of the fee request was excessive under Rule 41(a)(2) standards.  See generally Kern v. TXO Prod. Corp., 738 F.2d 968, 972-73 (8th Cir. 1984).  The court awarded Painter fees of $37,493.35.  She appeals that award.

Painter's argument on appeal is virtually incoherent.  Apparently, she argues that the district court's initial voluntary dismissal order was a final order making Painter a prevailing party under ERISA, that the order stated she would be paid all her attorney fees, that she therefore gave up her right to appeal the order, and that the district court's subsequent order reducing her fees was contrary to this law of the case.  The argument has many fatal flaws.  First, it is not clear from the record on appeal that the district court's initial voluntary dismissal order was a final order, and Painter made no effort to clarify that issue, then or now.  Second, Painter was not a prevailing party under ERISA.  As Part II of this opinion makes clear, the district court properly denied her motion to dismiss for lack of ERISA subject matter jurisdiction.  We also reject Painter's suggestion that dismissal of Golden Rule's declaratory judgment action was inevitable.  The district court never considered Golden Rule's alternative motion to stay the action while contract remedies were exhausted; had Golden Rule pressed that point after the court corrected its subject matter jurisdiction ruling, a stay might have been granted.  Finally, the district court's initial order expressly stated that it was dismissing under Rule 41(a)(2); if Painter's attorneys construed that order as authorizing a fee award on some other basis, they have only themselves to blame.

For these reasons, we find no error of law in the district court's analysis of the Rule 41(a)(2) attorney fee issue.  After careful review of the record, we conclude that

the court did not abuse its considerable discretion in reducing Painter's initial fee request.

## IV.  Conclusion.

Painter concludes her brief in No. 96-3114 by suggesting that if her state law claims are preempted by ERISA, the district court erred in not granting her leave to amend her complaint to assert new claims under ERISA. Painter never made this request to the district court, either before or after that court ruled on the preemption issue.  Even now, she does not advise this court what ERISA claims she wishes to assert.  In the first lawsuit, Painter fought Golden Rule's declaratory judgment action in the district court for nearly three years without asserting ERISA claims of her own.[4]  We ordinarily do not consider issues raised for the first time on appeal.  See Miller v. Federal Emergency Mgmt. Agency, 57 F.3d 687, 689 (8th Cir. 1995).  Painter has given us no good reason to depart from this practice here.

The judgments of the district court are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]Painter's challenge to Golden Rule's declaratory judgment action is one of many roadblocks her attorneys have erected to avoid prompt resolution of the Conversion Policy coverage issue that is the core of this dispute.  We think it deplorable that the coverage issue is not yet ripe for decision.  But because this is the result of Painter's litigation strategy, we will refrain from attacking the resulting impasse *sua sponte*.