**Antoine CHAMI, M.D.**

v.

**PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY**

**No. 3:01CV370.**

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 5, 2002.

## ORDER

MOODY, District Judge.

The parties seek resolution of one issue: whether the Employee Income Security Act of 1974 ("ERISA") governs the insurance policy at the center of this dispute. As for the procedural posture, this matter comes before the court upon Chami's "Motion to Strike," Provident's ERISA defenses;[1] and Provident's "Motion to Dismiss and/or for Summary Judgment[2]."

These facts are before the court on a "Stipulated and Agreed Statement of Facts," ("Stipulation" or "Stip.") filed on November 14, 2001. In early 1988, Chami, a licensed anesthesiologist, began working at St. John's Hospital in Detroit, Michigan. On June 30, 1988, he enrolled in his employer's disability plan,[3] which qualified as an "employee welfare benefit plan" and therefore ERISA governed it.[4] Provident rendered underwriting services to the Plan, and apparently drafted the governing instrument. Page five of that document gave employees a "Conversion Privilege." (*See* Def. Resp. at Ex. A, p. 5.) The pertinent language provides that, "[i]f the insurance on an Employee under age 65 ends, it may be converted to an individual non-cancellable and guaranteed continuable policy (herein called the 'new policy')." (*Id.*) The document then lists certain conditions applicable to the "new policy." (*See id.*)

After approximately two years on the job, the employment relationship ended. Concomitant with his termination, Chami

R. Kent Rowe, III, and Marie Anne Hendrie, Rowe and Rowe, South Bend, IN, for plaintiff.

Mark E. Schmidtke and Robert L. Clark, Hoepner, Wagner and Evans, LLP, Valparaiso, IN, for defendant.

1. *See* FED.R.CIV.P. 12(f) ("[T]he court may order stricken from any pleading any insufficient defense.").

2. *See* FED R.CIV.P. 12(c).

3. The parties do not indicate the name of this employee benefit plan, so the court will refer to it as the "Plan."

4. The terms "employee welfare benefit plan" and "welfare plan" mean any plan ... which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan ... is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... disability ... benefits. 29 U.S.C. § 1002(1).

"exercised an option contained in the Plan to convert his disability coverage to an individual disability policy, also issued by Provident." (Stip. at ¶ 6.) Since page five of the Plan document bestowed a conversion privilege upon Chami, he elected to exercise it. Provident processed his conversion election, creating a new insurance policy number for him. (*See id.* at ¶ 7.) Chami maintained the policy as a going concern, tendering premium payments as they became due. In November 2000, Chami submitted a claim to Provident for disability benefits. (*See id.* at ¶ 13.) By means of a letter dated April 6, 2001, Provident communicated its decision to deny the claim. (*See* Compl. at Ex. B.) Dissatisfied with this result, Chami filed suit in St. Joseph (Indiana) Superior Court, essentially claiming Provident breached its contractual duty of good faith. (*See* Compl. at ¶¶ 10–11.) Provident removed the action to federal court, asserting both federal question and diversity bases of original jurisdiction.[5] The parties subsequently filed the cross-motions presently before the court.

▪ If a state law "relate[s] to any employee benefit plan," ERISA preempts it. 29 U.S.C. § 1144(a). This complete preemption includes common law of contract. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39, 48 (1987) ("[W]e have emphasized that the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'" (internal citation omitted)). If Chami's common law cause of action "relates" to the Plan, ERISA preemption is appropriate. The sole question for resolution, therefore, is whether the insurance policy resulting from the exercise of the "conversion privilege" is part of an "employee welfare benefit plan" and therefore subject to ERISA.

Unfortunately, the Seventh Circuit has not yet weighed in on this subject, signaling this court's need to engage in an independent analysis on this question of law. *See Walker v. Norris,* 917 F.2d 1449, 1458 (6th Cir.1990) (mandating rigorous analysis where the relevant higher court has "not yet addressed" the issue). Since a perusal of the statutory text is not illuminating, *see Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187, 202 (2000) ("In ERISA cases, [a]s in any case of statutory construction, our analysis begins with the language of the statute.... And where the statutory language provides a clear answer, it ends there as well." (internal citation omitted)), the next step is a review of other courts' interpretation. The circuits that have addressed the question fall into two camps.

Provident urges the court to adopt the approach embraced by the Eighth Circuit. In *Painter v. Golden Rule Ins. Co.,* 121 F.3d 436 (8th Cir.1997), the court held that ERISA governed the conversion policy under which the insured was denied coverage. 121 F.3d at 440–41. The plaintiff's common law cause of action was therefore preempted. *See id.* at 440. The following quote from the opinion best summarizes the *Painter* court's rationale:

> [T]he Conversion Policy came into being as a result of Painter exercising her right under the group policy to obtain this specific insurance policy. Thus, the right to a Conversion Policy was part of the plan or program "established" by [the employer] to provide medical benefits for its current and former employees. As such, the Conversion Policy is a

---

5. Since diversity jurisdiction clearly exists in this action, the matter presently before the court has no jurisdictional implications.

component of [the employer's] ERISA plan.

*Id.* at 439–440.

The First Circuit, and most recently, the Ninth Circuit, forged a different path, and it is the one Chami asks this court to travel. In *Demars v. CIGNA Corp.*, 173 F.3d 443 (1st Cir.1999), the First Circuit encountered facts almost identical to the *Painter* court, namely an individual terminated employment and exercised a conversion right granted by an employee welfare plan. 173 F.3d at 444. The First Circuit rejected the *Painter* approach, expressing concern that such a ruling would create an all-too-distant relationship between the insurance claim at issue in the litigation, and the employee benefit plan proper. *See id.* at 445. In holding that ERISA did not preempt Demars' cause of action, the court made a sharp distinction between a conversion right embodied in an employee benefit plan that is subject to ERISA,[6] and the conversion policy itself, which is not. *See id.* The Ninth Circuit recently embraced this view. *See Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 877 (9th Cir.2001) ("*Demars* carefully distinguishes between the right to convert from an ERISA plan to a converted policy, which is covered by ERISA, and the converted policy itself, which is not.").

The Eighth Circuit's result is attractive because it furthers the notion that ERISA, a remedial statute, requires a liberal (*i.e.*, broad) construction. *See Farm King Supply, Inc. Integrated Profit Sharing Plan and Trust v. Edward D. Jones & Co.*, 884 F.2d 288, 291 (7th Cir.1989) (identifying "the remedial purpose of ERISA"); *Kross v. Western Elec. Co., Inc.*, 701 F.2d 1238, 1242 (7th Cir.1983) ("ERISA is a remedial statute to be liberally construed."). The breadth of ERISA, however, is not without limits. Merely because virtually every

adult in the United States has been an "employee" at some time in their lives does not mean their disputes over the denial of health or disability benefits automatically fall within the grappling hooks of ERISA regulation. The advantage of the *Demars/Waks* line-of-cases is that it recognizes this limitation. This approach, however, is unsatisfying because it emphasizes line-drawing, which necessarily runs the risk of arbitrariness. Take a pension plan for instance. Its governing document could provide a "conversion privilege," allowing a retiree to receive the present value of his/her vested accrued benefit and "convert" it to an Individual Retirement Account ("IRA"). According to the rationale in *Painter*, ERISA would govern this rollover IRA because the IRA came into existence solely as a result of exercising the conversion privilege, a ridiculous result. *See Metz v. Independent Trust Corp.*, 994 F.2d 395 (7th Cir.1993) (concluding IRAs are generally "not even governed by ERISA."). If the plan document was further drafted in a manner whereby all the terms, conditions, rights, and obligations of the IRA holder (*i.e.*, the retired employee) were embodied in the plan document itself, it appears the *Demars/Waks* approach would provide ERISA coverage (and preemption) to this contrivance, thereby producing an equally absurd result.

■ The better view is to focus upon the underlying policy considerations at work in the passage of ERISA, in general, and the preemption clause, in particular. ERISA was enacted, primarily, to protect employees and their beneficiaries. *See* 29 U.S.C. § 1001(b) ("It is hereby declared to be the policy of this chapter to protect ... the interests of participants in employee benefit plans and their beneficiaries."); *Mertens v. Hewitt Associates*, 508 U.S.

---

**6.** This part of the *Demars* opinion is dictum.

248, 261, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); Reorg. Plan No. 4 of 1978, 43 Fed.Reg. 47,713, *reprinted in* 92 Stat. 3790 (1978) (Message of Pres. Carter: "ERISA was an essential step in the protection of worker pension rights."). In this case, Chami clocked his last hour at St. John's Hospital in 1990, almost ten years prior to the time Provident denied his disability claim. Moreover, Chami was not a St. John's Hospital retiree, nor was the occurrence of his alleged disability the result of his employment there. The relationship between Chami's status as an "employee" and the dispute at issue in this litigation is attenuated, at best.

A secondary objective of ERISA is to provide employers with an incentive to establish and maintain employee benefits plans. In the words of the House Ways and Means Committee, "[i]n broad outline, the objective is to increase the number of individuals participating in employer-financed plans." H.R. REP. NO. 93–807, at Part II (Feb. 21, 1974), *reprinted in* 1974 U.S.C.C.A.N. 4670, 4676. ERISA's preemption clause assisted in furthering this purpose, by allowing the plan sponsor to comply with only one set of regulation and reporting requirements. The alternative was to subject employers to a system of multiple competing and inconsistent regulation and reporting requirements. *See* SEN. REP. No. 93–127, at Part VI (Apr. 18, 1973), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4871 ("Because of the interstate character of employee benefits, the Committee believes it essential to provide for a uniform source of law."); 120 CONG. REC. S15,737 (Aug. 22, 1974) (statement of Sen. Williams) ("[T]he substantive and enforcement provisions ... are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans."). Duplicative regulation and reporting requirements would inevitably have lead to increased costs of establishing and administering employee benefit plans, causing an eventual decline in the number of employers willing to provide such plans. The purpose behind ERISA's preemption clause is, therefore, clear: protect *employers* from duplicative state and local regulation. Even if one is skeptical that employers are the direct intended beneficiaries of preemption, it is abundantly clear preemption was not designed to inure to the benefit of the insurance industry. ERISA specifically encourages states to regulate the insurance industry. *See* 29 U.S.C. § 1144(b)(2)(A) ("[N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance."); *see also* SEN. REP. No. 93–127, at Part VI (Apr. 18, 1973), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4883 ("[T]he Act does not exempt or relieve any person from complying with any state law regulating insurance."). A vital component of the states' regulation of the insurance industry is the common law of contracts.

This dispute only tangentially implicates ERISA's broad purpose of protecting employees, since Chami and St. John Hospital severed ties over a decade before this dispute arose. Moreover, the objective of the preemption clause is to promote the growth and security of the private employee benefit system; the protection afforded to employers specifically excludes the insurance industry, whose primary regulatory vehicle is the several states. Thus, to rule in favor of Provident here would further neither of the previously-mentioned ERISA objectives, and would thwart the interests of the states in regulating the rights and obligations created by insurance contracts.

**IT IS THEREFORE ORDERED THAT** Chami's motion to strike is therefore **GRANTED**; Provident's motion to dismiss for failure to state a claim/summary judgment is **DENIED**.

**IT IS FURTHER ORDERED THAT** paragraphs 2, 3, and 4 of Provident's "Additional Defenses," filed with the Clerk on June 29, 2001, are hereby **STRICKEN**.

**SO ORDERED.**