# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1679

_____

| | | |
|---|---|---|
| Sarah Fink, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Dakotacare; Dakotacare Administrative | * | District of South Dakota. |
| Services, Inc.; Platte Community | * | |
| Memorial Hospital, Inc., | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: November 7, 2002

Filed: March 31, 2003

_____

Before WOLLMAN, LAY, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Sarah Fink admitted herself for psychiatric hospital treatment in late 1997, expecting that her medical expenses would fall within the continuation group health coverage that her mother, Margaret Fink, had obtained from a former employer, Platte Community Memorial Hospital, Inc. ("Platte"). Five days later, Platte terminated contracts with its group health benefits provider, Dakotacare, a South Dakota health maintenance organization, and with Dakotacare Administrative Services, Inc. ("DAS"), a Dakotacare subsidiary hired to assist Platte in providing continuation

benefits. Margaret Fink declined to elect Platte's new group health benefits plan for 1998, but she paid the January 1998 continuation coverage premium to Dakotacare after discovering Sarah was ill. Dakotacare refunded the premium in late January and refused to pay for medical services rendered to Sarah after the effective date of Platte's termination of Dakotacare.

Sarah then commenced this action, asserting numerous state law claims against Platte, Dakotacare, and DAS. Defendants removed the case to federal court. The district court concluded that all of Sarah's state law claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, as amended by the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"). After recharacterizing those claims as ERISA claims, the district court granted summary judgment in favor of Platte, Dakotacare, and DAS. Sarah appeals, challenging the district court's preemption and summary judgment rulings, which are issues we review de novo. See Painter v. Golden Rule Ins. Co., 121 F.3d 436, 438 (8th Cir. 1997), cert. denied, 523 U.S. 1074 (1998); Stearns v. NCR Corp., 297 F.3d 706, 708 (8th Cir. 2002), cert. denied, 123 S. Ct. 977 (2003). We reverse.

## I. Background

Margaret Fink resigned her employment with Platte in early 1997, moving to the State of Washington. Platte was a covered employer then maintaining a group health benefits plan, so COBRA required Platte to offer Margaret "continuation coverage" for at least eighteen months after a qualifying event such as termination of employment. See 29 U.S.C. §§ 1161(a), 1162(2), 1163. Continuation coverage "must consist of coverage which . . . is identical to the coverage provided under the plan to similarly situated beneficiaries under the plan with respect to whom a qualifying event has not occurred." 29 U.S.C. § 1162(1). Margaret elected to purchase the COBRA continuation coverage offered by Platte's group health provider, Dakotacare. That coverage began on February 1, 1997. As a student at the

Lutheran School of Theology in Chicago, Sarah was then an eligible dependent under Platte's group health plan and therefore a qualified COBRA beneficiary. See 29 U.S.C. § 1167(3)(A)(ii).

The critical events for purposes of this appeal occurred in late 1997 and early 1998. In November 1997, Platte decided to switch group health providers from Dakotacare to Lincoln Mutual Insurance Company. Platte sent Margaret Fink a letter informing her of the impending switch.[1] On December 23, Margaret applied for health insurance offered by her new employer and sent Platte a letter advising that "[w]e are choosing not to go on the new Lincoln Mutual insurance plan." On December 27, Sarah admitted herself to McKennan Hospital ("McKennan") for treatment of a schizo-affective disorder. On December 29, after learning of her daughter's illness, Margaret paid the continuation coverage premium for January 1998 with a check payable to Dakotacare COBRA Services, enclosing the appropriate payment voucher. Margaret testified that she paid this premium to ensure there was no gap in her family's health insurance coverage, because she did not know when she would be covered by her new employer's health plan, or when Platte's switch from Dakotacare to Lincoln Mutual would take effect.

In the days that followed Sarah's hospital admission, a Dakotacare employee repeatedly assured McKennan's staff that Sarah's mental health treatment was covered under Margaret's continuation coverage. However, on January 8 or 9, Dakotacare received notice that Platte had cancelled its group health benefits contract with Dakotacare effective January 1. On January 20, Dakotacare informed Margaret by letter that her continuation coverage was terminated effective January 1, and Dakotacare refunded Margaret's December 29 premium payment on January 30.

---

[1]That letter is not in the summary judgment record, and the parties dispute whether it advised Margaret that she must switch to Lincoln Mutual to maintain her COBRA continuation coverage.

Sarah remained in the hospital through February 4. On May 18, McKennan informed Margaret that she would be billed for all of the medical expenses Sarah incurred between January 1 and February 4. The Finks assert they would have transferred Sarah to another hospital had they known that Platte's group health plan did not cover Sarah's treatment at McKennan.

After concluding that all of Sarah's state law claims are preempted by ERISA, the district court granted summary judgment in favor of Dakotacare and DAS because "[o]nce the contract between Dakotacare and Platte terminated, the coverage of Platte's plan members also ended." The court then granted summary judgment in favor of Platte, the plan sponsor under ERISA, because its decision to switch its group health plan from Dakotacare to Lincoln Mutual was not a qualifying event under COBRA, see 29 U.S.C. § 1163, and therefore Platte had no duty to notify Margaret that she must switch to the new provider to continue her continuation coverage. In addition, the court concluded that Sarah's leaving school was a second qualifying event, but it did not trigger Platte's duty to notify Sarah of additional COBRA rights because neither Margaret nor Sarah notified Platte of the event.

## II. ERISA Preemption

Sarah Fink's complaint asserted common law breach-of-contract claims against Dakotacare and DAS; common law tort claims against Dakotacare, DAS, and Platte; and claims for violation of the Unfair Trade Practices Chapter of the South Dakota insurance laws against Dakotacare. See S.D. CODIFIED LAWS §§ 58-33-1 to -89. The district court dismissed these claims as preempted by ERISA. We agree.

In Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987), the Supreme Court held that ERISA's civil enforcement provisions, codified at 29 U.S.C. § 1132(a), are "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." Applying Pilot Life, this court

has consistently held that state law causes of action are completely preempted by ERISA when they "arise from the administration of benefits." Kuhl v. Lincoln Nat. Health Plan, 999 F.2d 298, 302-04 (8th Cir. 1993), cert. denied, 510 U.S. 1045 (1994); see Painter, 121 F.3d at 439-40; Donatelli v. Home Ins. Co., 992 F.2d 763, 764-65 (8th Cir. 1993). It is clear that Sarah's state law claims arise from the denial of her claim for continuation coverage benefits under Platte's group health plan. That plan was a welfare benefit plan governed by ERISA. See 29 U.S.C. § 1002(1).

Seeking to save her state law claims from this well-established doctrine, Sarah first argues that recent Supreme Court decisions have "narrowed the scope of ERISA preemption." Even if that is true in other contexts, the Court has expressly declined invitations to either expand or contract the Pilot Life doctrine that ERISA's civil enforcement remedies preempt conflicting or competing state law judicial remedies. See Rush Prudential HMO, Inc. v. Moran, 122 S. Ct. 2151, 2164-71 (2002); Unum Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 376 n.7 (1999).

Second, Sarah argues that her claims for violation of the South Dakota unfair insurance practices act are saved from preemption by the ERISA "savings clause," which excepts from the statute's broad preemption provision "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). But this argument ignores the distinction between a substantive state insurance law, which if saved will provide "a relevant rule of decision" in an ERISA civil enforcement action, Unum, 526 U.S. at 376 n.7, and a state judicial remedy, which is conflict-preempted under Pilot Life *even if* it was created or authorized by a state insurance statute. See generally Equitable Life Assurance Soc'y of U.S. v. Crysler, 66 F.3d 944 (8th Cir. 1995). The district court correctly ruled that Sarah's state law causes of action, including her claims under the South Dakota unfair insurance practices statute, are preempted by ERISA.

### III. Sarah's ERISA Claims

When a complaint pleading only state law claims that are preempted by ERISA is removed to federal court, one or more of the claims must be "recharacterized" as an ERISA claim to establish federal jurisdiction. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-67 (1987). In this case, Sarah filed a Third Amended Complaint *after* removal that both reasserted her state law claims and added an ERISA claim against only Dakotacare. The district court nonetheless recharacterized Sarah's claims against Platte and DAS as ERISA claims before granting summary judgment in favor of these defendants as well as Dakotacare. This was error. When a plaintiff after removal amends her initial complaint to assert one or more ERISA claims, the federal court should limit its analysis to the claims as pleaded. See Stewart v. U.S. Bancorp, 297 F.3d 953, 958-59 (9th Cir. 2002); Lyons v. Philip Morris Inc., 225 F.3d 909, 914 (8th Cir. 2000); Hull v. Fallon, 188 F.3d 939, 942-43 (8th Cir. 1999), cert. denied, 528 U.S. 1189 (2000). However, Platte and DAS failed to raise this issue on appeal.

Turning to the merits, Sarah's claims under ERISA raise two distinct issues: whether Sarah lost her right to continuation coverage benefits when Margaret failed to enroll in Platte's 1998 group health plan with Lincoln Mutual, and whether Sarah's claims were affected when she withdrew from school in early January 1998.

**A.** Dakotacare and DAS argue that Margaret's continuation coverage expired when she declined coverage in the Lincoln Mutual plan and Platte terminated its plan with Dakotacare. In our view, the flaw in this contention is its assumption that Margaret acted inconsistently in telling Platte she was not interested in moving to the Lincoln Mutual plan and then mailing the January 1998 continuation coverage premium to Dakotacare. Margaret paid the premium to avoid any gap between the end of her continuation coverage with Platte and the start of health coverage under her new employer's plan. To avoid the potential coverage gap, Margaret sent Dakotacare a check for the January 1998 continuation coverage premium and

enclosed the appropriate monthly payment voucher. She made that payment on time, in the right amount, payable to the proper payee, and prior to formally cancelling her continuation coverage. Margaret did everything required to extend her continuation coverage through January 31, 1998. Avoiding coverage gaps was Congress's purpose in enacting the COBRA amendments to ERISA. Under COBRA, Margaret and her eligible dependents were legally entitled to continuation coverage for January 1998.[2]

Sorting out which defendant is liable for the denial of Margaret's continuation coverage in January 1998 may be difficult, and it is beyond the scope of this appeal. COBRA imposes a statutory duty on Platte as "plan sponsor" to provide continuation coverage identical to that provided to its current employees. See 29 U.S.C. §§ 1002(16)(B), 1161(a), 1162(1). The fact that Platte switched its plan from one group health provider to another may have modified but did not eliminate this duty:

> If coverage is modified under the plan for any group of similarly situated beneficiaries, such coverage shall also be modified in the same manner for all individuals who are qualified beneficiaries under the plan pursuant to [COBRA].

29 U.S.C. § 1162(1). Thus, it was not Margaret's obligation to learn whether her January 1998 continuation coverage premium should be paid to Dakotacare or Lincoln Mutual. She paid the January 1998 premium in accordance with the plan in effect when the payment was made. The ERISA fiduciaries administering Platte's plan were responsible for tendering the payment to the proper plan provider.[3]

---

[2]The record contains evidence that Sarah's benefits under Margaret's continuation coverage were exhausted on January 26, because the plan only covered thirty days of inpatient psychiatric care per six month period. That is an issue for the district court on remand.

[3]An ERISA fiduciary "shall discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries . . . (A) for the exclusive purpose

It appears that all three defendants are potentially liable as ERISA fiduciaries. Platte was the plan administrator. See 29 U.S.C. § 1002(16)(A)(ii). Platte's contract with Dakotacare stated that "Dakotacare shall be fiduciary of the plan administrator." As for DAS, its agreement with Platte made DAS responsible for "maintaining coverage, for every Qualified Beneficiary who elects the continuation of coverage," and for "receiv[ing], account[ing] for, and appropriately distribut[ing] the payments received from the Qualified Beneficiary to the applicable health benefit plan." DAS was an ERISA fiduciary in exercising these discretionary duties as Platte's agent. See 29 U.S.C. § 1002(21)(A); Kerns v. Benefit Trust Life Ins. Co., 992 F.2d 214, 216-17 (8th Cir. 1993). These fiduciary duties were in effect when DAS received Margaret's January 1998 premium payment, regardless of whether its contract with Platte was thereafter cancelled retroactively to January 1, 1998. Thus, each of these defendants may be individually or jointly liable for the breach of fiduciary duty that occurred when Margaret's January 1998 premium payment was not applied in a manner that preserved her continuation coverage for that month.

Moreover, the record on appeal suggests that Margaret's January 1998 premium payment was in fact cashed by Dakotacare before it was refunded. This raises the interesting question whether a group health provider may retroactively cancel continuation coverage after it has accepted a qualified beneficiary's premium payment, based upon the employer's retroactive cancellation of the group health contract. Compare Novak v. Irwin Yacht & Marine Corp., 986 F.2d 468, 471-72

---

of: (i) providing benefits to participants and their beneficiaries," 29 U.S.C. § 1104(a)(1), and must exercise its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use," 29 U.S.C. § 1104(a)(1)(B). ERISA beneficiaries may obtain appropriate equitable relief to redress a fiduciary's breach of these duties. See 29 U.S.C. § 1132(a)(3); Varity Corp. v. Howe, 516 U.S. 489, 515 (1996).

(11th Cir. 1993), with National Cos. Health Benefit Plan v. St. Joseph's Hosp., 929 F.2d 1558, 1573 (11th Cir. 1991).

Under this view of the case, it is simply irrelevant whether Platte, as plan administrator, and Dakotacare and DAS, as additional ERISA fiduciaries, adequately advised Margaret as to the effect of not switching to the Lincoln Mutual plan. In December 1997, before Platte switched group health providers, Margaret properly paid the premium to extend her continuation coverage through January 1998. The responsible ERISA fiduciary or fiduciaries were then obligated to apply that payment so that the coverage was maintained. Any issues as to which defendant is liable for failing that duty are for the district court to resolve on remand.

**B.** There remains the thorny question whether Sarah was a qualified beneficiary of Margaret's continuation coverage when the psychiatric treatment expenses were incurred. COBRA provides that a dependent child is a qualified beneficiary if she was a beneficiary under the plan on the day before the COBRA qualifying event. See 29 U.S.C. § 1167(3)(A). When Margaret terminated her employment with Platte in early 1997, the plan covered unmarried children who "[a]re under 25 years of age and are a full-time student at an accredited educational institution." Sarah fell within that class, so she became entitled to continuation coverage "identical to the coverage provided under the plan to similarly situated beneficiaries." 29 U.S.C. § 1162(1). But Sarah withdrew from the seminary on January 5, 1998. Platte's plan covered "[s]ervices rendered to an Eligible Dependent *while such person is covered*" (emphasis added). Thus, although the district court did not reach the issue, it appears that Sarah's eligibility for continuation coverage benefits under Margaret's election may have ended on January 5, 1998.

However, COBRA also provides that ceasing to be a covered dependent child is a second qualifying event that entitles the child to notice of her right to extend *her* continuation coverage until 36 months after the date of the initial qualifying event.

-9-

<u>See</u> 29 U.S.C. §§ 1162(2)(A)(ii), 1163(5), 1166(a)(4)(B). It is undisputed that Sarah received no such notice from plan administrator Platte or from the Dakotacare defendants as Platte's fiduciary agents.

Platte responds, and the district court agreed, that the duty to give Sarah this notice never arose because Margaret failed to notify Platte of the second qualifying event, as 29 U.S.C. § 1166(a)(4)(B) requires. But COBRA provides that Margaret had sixty days to provide this notice. <u>See</u> 29 U.S.C. § 1166(a)(3). During that sixty day period, Dakotacare sent its January 20, 1998, letter advising Margaret that her "Employer Group Health Plan terminated effective 01/01/98." That advice was erroneous -- Platte's group health plan had not terminated, and Sarah was at least arguably entitled to a new continuation coverage election period under 29 U.S.C. § 1165(1)(C)(ii). In these circumstances, summary judgment was improper because the district court failed to consider whether this faulty advice from an ERISA fiduciary excused Margaret's failure to advise Platte of the second qualifying event, in which case Sarah would remain entitled to notice and an opportunity to elect the 36-month continuation coverage for eligible dependents who lose their qualified beneficiary status. <u>Cf.</u> <u>Bixler v. Cent. Pa. Teamsters Health & Welfare Fund</u>, 12 F.3d 1292, 1302 (3d Cir. 1993). Once again, these are issues for the district court to resolve in the first instance on remand.

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion. Dakotacare's motion to strike portions of Sarah's reply brief is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-