**WORKFORCE DEVELOPMENT, INC., Plaintiff,**

v.

**CORPORATE BENEFIT SERVICES OF AMERICA, INC., Defendant.**

**No. CIV. 03–5439(RHK/AJB).**

United States District Court, D. Minnesota.

May 3, 2004.

---

Robert G. Benner and Sharon C. Zehe, Dunlap & Seeger, PA, Rochester, Minnesota, for Plaintiff.

Kevin P. Hickey and Tiffany M. Quick, Bassford Remele, PA, Minneapolis, Minnesota, for Defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

This matter comes before the Court on Plaintiff's Motion to Remand. Plaintiff Workforce Development, Inc. ("Workforce") has alleged various state common law claims against Defendant Corporate Benefit Services of America, Inc. ("CBSA") regarding CBSA's purported failure to process claims according to an agreement with Workforce. CBSA removed the action from Olmsted County District Court on the ground the Complaint states a federal cause of action under the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101, *et seq.* Workforce now moves the Court to remand this matter to state court. For the reasons set forth below, the Court will grant Workforce's motion.

### Background

Workforce is an employer and the plan sponsor of a self-funded employee welfare benefit plan governed by ERISA. (Hickey Aff. Ex. A.) Workforce and CBSA are signatories to the Administrative Services Agreement, under which CBSA, acting as the contract administrator, provides administrative services for Workforce, the plan administrator. (Zehe Aff. Ex. A at 1.) Under the Administrative Services Agreement, Workforce retains final authority and responsibility for the plan, funds the plan, and collects contributions. (*Id.* at 1–2.) CBSA, on the other hand, is obligated to assist in developing the plan documents, review enrollment applications, and process and adjudicate claims. (*Id.* at 2–3.) In exchange for these services, Workforce pays CBSA a fee. (*Id.* at 4.) The Administrative Services Agreement is "governed by the laws of the State of Minnesota or, where applicable, federal law," and "constitute[s] the entire contract between the parties." (*Id.* at 6, 5.)

Workforce entered into a separate contract with Avemco Insurance Co. ("Avemco") to secure stop-loss insurance coverage. (Hickey Aff. Ex. B.) Stop-loss insurance is often used by self-insured employers such as Workforce to protect against the risk that a high claim might wipe out the employer's medical insurance fund. Under the stop-loss agreement, Avemco agreed to provide excess reimbursement coverage for individual health insurance claims exceeding $20,000 or a total aggregate of $475,000. (*Id.;*

Compl. ¶ V.) The stop-loss insurance covered only expenses "[p]aid from 01/01/2002 through 12/31/2002." (Hickey Aff. Ex. B. at 1.)

On July 18, 2002, an employee of Workforce gave birth to a premature daughter at the Mayo Clinic in Rochester, resulting in large medical expenses. On December 12, 2002, the Mayo Clinic submitted the largest bill—in excess of $400,000—to CBSA. CBSA did not, however, pay the bill before the end of the year. Because the bill was not "[p]aid from 01/01/2002 through 12/31/2002," (*id.*), it fell outside Avemco's stop-loss policy.

On September 17, 2003 Workforce filed this suit alleging breach of contract, breach of fiduciary duty, negligence, and promissory estoppel against CBSA for its alleged failure to process the $400,000 claim so as to ensure coverage by Avemco.

### Standard of Decision

Under 28 U.S.C. § 1441(a), a defendant may remove a matter from state court if that matter could have originally been brought in federal court. The district court must, however, remand the case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction ...." 28 U.S.C. § 1447(c). The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction. *In re Bus. Men's Assurance Co.*, 992 F.2d 181, 183 (8th Cir.1993). When reviewing a motion to remand, a court must resolve all doubts about federal jurisdiction in favor of remand. *Id.*

### Analysis

■ In general, a claim is only removable under federal question jurisdiction if a federal issue appears on the face of the plaintiff's well-pleaded complaint. *See, e.g., Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838, 840–41, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989). The United States Supreme Court has created an exception

to this rule, however, where Congress has so completely preempted a particular area of law that "any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

This exception applies to § 502(a) of ERISA, the statute's civil enforcement provisions. Section 502(a) reads, in pertinent part,

■ A civil action may be brought—

(1) by a participant or beneficiary—

. . . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

. . . . .

(3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ....

29 U.S.C. § 1132(a). Because § 502(a) provides "the exclusive remedy for rights guaranteed under ERISA," *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 144, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), "causes of action within the scope of the civil enforcement provisions of [§ 502(a) are] removable to federal court," *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. 1542.

CBSA removed this matter from state court on the ground that ERISA completely preempts Workforce's breach of contract, breach of fiduciary duty, negligence, and promissory estoppel claims. Workforce rejects this assertion, and has moved

the Court to remand the case to state court.

## I. Complete Preemption Analysis

■ To determine whether Workforce's claims are completely preempted, the Court must determine whether (1) Workforce has standing to bring a claim; (2) the subject matter of the state law claim falls within the scope of ERISA; and (3) the claim can be resolved without reference to the plan language. *Blaylock v. Hynes,* 104 F.Supp.2d 1184, 1189 (2000) (Mongomery, J.); *see also Tovey v. Prudential Ins. Co. of America,* 42 F.Supp.2d 919, 925 (W.D.Mo.1999). Because Workforce concedes that it, as a fiduciary, has standing under ERISA, the Court will address only the latter two elements.

### A. The Scope of the Claims

■ The first of the two remaining elements for the Court to consider is whether Workforce's state law claims fall within the scope of § 502(a). To do so, "the claim must seek to recover benefits, to enforce rights, or to clarify rights to future benefits." *Tovey,* 42 F.Supp.2d at 925. A claim is within the scope of § 502(a) where the "essence of [the plaintiff's] claim rests on the denial of benefits." *Hull v. Fallon,* 188 F.3d 939, 943 (8th Cir.1999). A claim is *not* within that scope where it

> clearly does not seek to recover benefits or enforce rights under an ERISA plan pursuant to section 502(a)(1)(B) ... [nor] seek relief for a breach of fiduciary duty [arising under ERISA], [n]or for violations of the reporting requirements.

*McClelland v. Gronwaldt,* 155 F.3d 507, 518 (5th Cir.1998).

■ The state law claims asserted here do not fall within the scope of § 502(a). Workforce's claims for breach of contract, breach of fiduciary duty, negligence, and promissory estoppel involve the extent of CBSA's obligation—if any—under the Administrative Services Contract to provide timely payment. These claims "do not invoke the protections of ERISA" and are therefore "grounded solely in state law." *Blaylock,* 104 F.Supp.2d at 1189. Although some claims for breach of fiduciary duty come within § 502(a), that duty must arise under ERISA:

> An ERISA fiduciary "shall discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries ... for the exclusive purpose of ... providing benefits to participants and their beneficiaries," 29 U.S.C. § 1104(a)(1).... ERISA beneficiaries may obtain appropriate equitable relief to redress a fiduciary's breach of *these* duties.

*Fink v. Dakotacare,* 324 F.3d 685, 690 n. 3 (8th Cir.2003) (emphasis added). Because Workforce's action targets CBSA's duty to Workforce under the Administrative Services Contract—rather than CBSA's duty to beneficiaries under ERISA—it "affect[s] employee benefit plans in too tenuous, remote, [and] peripheral a manner" to come within the civil enforcement provision. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Accordingly, having failed to find signs of "artful pleading ... [designed] to deny the defendant's right to a federal forum," *Hull,* 188 F.3d at 942 n. 5, the Court concludes that Workforce's claims fall outside the scope of § 502(a).

### B. The Terms of the Plan

■ The Court must also consider whether the state law claims can be resolved without reference to the plan documents. *See Tovey,* 42 F.Supp.2d at 925. State law claims are generally preempted where the resolution of the claims "necessarily involve[s] questions of plan interpretation." *Blaylock,* 104 F.Supp.2d at 1189. Where the resolution of "state law claims

is inextricably intertwined with and substantially dependent upon analysis of the terms of the ... agreement, the[ ] claims are thus subject to the complete preemption doctrine." *Schuver v. MidAmerican Energy Co.*, 154 F.3d 795, 799 (8th Cir. 1998) (complete preemption under NLRA).

 Here, the plan terms do not affect the present lawsuit. While the plan does contain a provision regarding the timely processing of claims, that provision does not set forth the parties' obligations to each other, but rather, their obligations to plan participants. (Hickey Aff. Ex. A at 42.) A claim might well be "paid within a reasonable period of time" under the plan, and nonetheless contravene the Administrative Services Contract. (*Id.*) Thus, a court need not refer to the plan documents to discover the appropriate standard for timeliness. Such a standard, if it exists, is a creature of parties' agreements and those agreements alone. The Court therefore determines that this case is not removable under the complete preemption doctrine.

## II. Attorneys' Fees

 Workforce has also moved for attorneys' fees. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." (Emphasis added). "[W]hile § 1447 empowers the Court to award attorneys' fees, the authority to do so is discretionary." *Dakis v. Allstate Ins., Co.*, 2003 WL 118245, at *2 (D.Minn. Jan.8, 2003) (Magnuson, J.). "[T]he propriety of the defendant's removal should be a focus of a decision regarding whether to impose fees." *Masepohl v. American Tobacco Co.*, 974 F.Supp. 1245, 1256 (D.Minn.1997) (Magnuson, J.). In the present matter, there is nothing to suggest that CBSA acted improperly in seeking removal. Although ultimately re-

manded, removal was reasonably sought. The Court accordingly concludes that each side should bear its own costs.

## Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED**:

1. Plaintiff's Motion to Remand (Doc. No. 6) is **GRANTED**; this matter is **REMANDED** to Olmsted County District Court;

2. Plaintiff's Motion for Attorneys' Fees (Doc. No. 6) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**