NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   NV-12-1378-KiDJu |
| BRADLEY I. WEINSTEIN and ROCHELLE H. WEINSTEIN, | Bk. No.   09-25205-MKN |
| Debtors. | |
| BRADLEY I. WEINSTEIN; ROCHELLE H. WEINSTEIN, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION; SETERUS INC., Servicer for FANNIE MAE; DAVID A. ROSENBERG, Chapter 7 Trustee; SHUMWAY VAN & HANSEN, | |
| Appellees. | |

Argued and Submitted on January 25, 2013
at Las Vegas, Nevada

Filed - September 4, 2013

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Mike K. Nakagawa, Bankruptcy Judge, Presiding

Appearances:     George Haines, of Haines & Krieger, L.L.C., argued
for appellants.

Before: KIRSCHER, DUNN and JURY, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellants, chapter 7[2] debtors Bradley I. Weinstein and Rochelle H. Weinstein ("Debtors"), appeal an order from the bankruptcy court directing the former chapter 13 trustee, Kathleen A. Leavitt ("Trustee Leavitt"), to disburse funds she held to appellee, Federal National Mortgage Association ("Fannie Mae"),[3] after the conversion of Debtors' bankruptcy case from chapter 13 to chapter 7. Debtors also appeal the bankruptcy court's order denying their motion for reconsideration. We AFFIRM both orders.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. The chapter 13 bankruptcy case and Fannie Mae's first motion for relief from stay**

Debtors filed a chapter 13 bankruptcy case on August 18, 2009. In 2004, Debtors obtained a purchase money loan from Mylor Financial Group, Inc. for their residence in Las Vegas, Nevada. In exchange for the loan, Debtors executed a promissory note and first deed of trust in favor of the lender. At the time of their bankruptcy filing, Debtors' first mortgage was $4,369.34 in arrears, as evidenced by a proof of claim filed by Mylor's successor in interest, CitiMortgage, Inc. ("CitiMortgage").

Debtors filed an Amended Chapter 13 Plan #2 ("Plan #2") on September 5, 2010, which was confirmed on October 5, 2010.

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[3] On October 2, 2012, a Conditional Order of Waiver was entered advising appellees: Fannie Mae; Seterus Inc., servicer for Fannie Mae; David A. Rosenberg, chapter 7 trustee; and Shumway Van & Hansen that if they failed to file a responsive brief, they would waive their right to oral argument. Appellees waived their right to oral argument.

Plan #2 proposed plan payments of $2,091.00 for 60 months to commence on September 14, 2009. Plan #2 also included a "Loan Modification Plan," which set forth details regarding adequate protection payments to be distributed by Trustee Leavitt to CitiMortgage while Debtors continued to negotiate a loan modification agreement on their first mortgage. Section 6.02.B.4. of Plan #2 (found in the Loan Modification Plan) states:

> The Creditor designated in Paragraph 1 above shall have a lien on all Adequate Protection Payments as set forth in Paragraph 2.c above whether this case is confirmed or unconfirmed. In the event this case is Dismissed or Converted to another Chapter, the Trustee shall distribute the unpaid Adequate Protection Payments to Creditors as soon as practicable and before closing the case.

During the parties' negotiation process, Fannie Mae became CitiMortgage's successor in interest of the first deed of trust on Debtors' residence.

On August 26, 2011, Fannie Mae filed a motion for relief from stay to proceed with its foreclosure rights on Debtors' residence ("First Stay Relief Motion"). By this point, Debtors' postpetition arrears on their first mortgage were $38,472.82. Based on Debtors' valuation of the residence of $222,000 and total encumbrances of $361,212.64, and because Debtors had failed to make postpetition mortgage payments, Fannie Mae argued that relief from stay was warranted under § 362(d)(1) and (d)(2). In its prayer for relief, Fannie Mae also asked the bankruptcy court to order Trustee Leavitt to set aside and deliver all adequate protection payments she had received from Debtors for the residence, or any other payments Debtors had made to satisfy the note. Fannie Mae's attached proposed order granted relief from

-3-

stay, but did not order the turnover of the mortgage payment funds.

A hearing on the First Stay Relief Motion was held on September 28, 2011, but was continued to October 26, 2011, so the parties could determine whether the arrears as stated in the motion matched the funds received by Trustee Leavitt as provided for in Debtors' confirmed Plan #2.[4] Before the next hearing, it was determined that Debtors did not qualify for a HAMP loan modification based on their income and, because their loan was more than eighteen months delinquent, they were also ineligible for any in-house modification programs. The parties agreed that if Debtors made a lump sum payment of $13,072 so the loan would be less than eighteen months delinquent, they would then be considered for in-house options.

At the continued hearing on October 26, 2011, counsel informed the bankruptcy court that Trustee Leavitt was holding approximately $30,000 Debtors could use to reduce the delinquency on their loan, making them eligible for review for an in-house modification. At Debtors' counsel's request, the hearing on the First Stay Relief Motion was continued again to November 9, 2011, so counsel could discuss the options with his clients. Prior to the November 9 hearing, Debtors' counsel emailed counsel for

---

[4] The following facts are set forth in the declaration of Cindy Lee Stock, counsel for Fannie Mae, filed in support of Fannie Mae's opposition to Debtors' motion for reconsideration. Debtors did not submit the Stock declaration as part of the record, but we were able to locate it on the bankruptcy court's electronic docket at Docket No. 102. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-4-

Fannie Mae advising her that Trustee Leavitt had agreed to release the funds in her possession to Fannie Mae. However, a disagreement over the amount of funds to be released arose, so the hearing was continued to November 30, 2011. The November 30 hearing was continued again to December 14, 2011, as the parties had not yet agreed on the amount of funds to be released. Prior to that continued hearing, it was determined that Debtors were not eligible for any loan modification because the current interest rate on their loan was already at 3%.

At the continued hearing on December 14, 2011, Debtors' counsel asked to continue the hearing on the First Stay Relief Motion again until January 4, 2012, so he could discuss with Debtors whether to bring their mortgage loan current or allow the motion to be granted. The hearing was continued again to January 18, 2012, as Debtors' counsel had not yet conferred with his clients.

At the continued hearing on January 18, 2012, Debtors' counsel stated that Debtors wanted to keep their residence, and that he would be putting together a written proposal that would include turnover of the approximate $33,000 being held by Trustee Leavitt and filing an amended chapter 13 plan to handle the remaining postpetition arrears. The hearing on the First Stay Relief Motion was continued to February 1, 2012. Just before that hearing, Debtors' counsel sent an email to counsel for Fannie Mae requesting a continuance to February 15 to finalize Debtors' proposal. Debtors' counsel confirmed that Trustee Leavitt was holding $35,140.00 for Fannie Mae.

The First Stay Relief Motion was ultimately taken off

calendar, as the parties had reached an agreement. On February 27, 2012, the bankruptcy court entered the parties' Agreed Order Conditioning the Automatic Stay and Granting Secured Creditor Adequate Protection ("Agreed Order"). Under the Agreed Order:

- Debtors agreed to re-commence making regular monthly payments to Fannie Mae under the terms of the note until all outstanding amounts were paid in full;

- As of February 13, 2012, Trustee Leavitt had paid to Fannie Mae $13,804.34 in adequate protection during the course of Debtors' chapter 13 bankruptcy, $4,369.34 of which had been credited towards the prepetition arrearage;

- Debtors agreed that $35,140.00, the current amount held by Trustee Leavitt for the benefit of Fannie Mae, would be turned over immediately and credited against their $48,913.28 postpetition arrearage;

- the remaining $13,773.28 deficiency would be paid through a modified plan, which Fannie Mae would support upon receiving at least $32,000 from Trustee Leavitt.

**B.    Debtors' conversion to chapter 7 and Fannie Mae's second motion for relief from stay**

On the same day the court entered the Agreed Order, Debtors filed a notice to convert their case to chapter 7.[5] Fannie Mae filed its second motion for relief from stay ("Second Stay Relief Motion") two days later on February 29, 2012, to proceed with its foreclosure rights. Fannie Mae contended that no equity existed in the residence, and relief from stay was warranted under § 362(d)(2). In its prayer for relief, Fannie Mae asked the court to terminate the stay and order Trustee Leavitt to set aside and deliver all adequate protection payments received from Debtors, or any other payments Debtors had made on the note. Despite Debtors'

---

[5] Debtors' notice to convert was filed at 9:17 a.m.; the Agreed Order was filed at 2:30 p.m.

-6-

assertion in their appellants' opening brief to the contrary, Fannie Mae's attached proposed order requested this same relief. Fannie Mae's separately filed notice warned, as required by Local Rule 9014(d)(1), that if Debtors failed to file and serve a timely written opposition, they could be denied the opportunity to speak at the hearing, and the court could rule against them. Despite the warning, Debtors did not file an opposition.

The hearing on the Second Stay Relief Motion was held on April 4, 2012. Counsel appeared for Debtors, Fannie Mae and Trustee Leavitt. Counsel for Trustee Leavitt, who did not oppose the relief, began by noting that Fannie Mae's disbursement request did not specify how much money she was to disburse, so she was appearing to get an exact figure. Debtor's counsel then apologized to the court for not filing a response and stated that he had no excuse for not doing so. Nonetheless, he proceeded to argue whether it was appropriate for Fannie Mae to be requesting monetary relief in a motion for relief from stay. Fannie Mae's counsel then explained that this was an unusual motion because, just prior to the conversion, the parties had agreed that the approximately $35,000 in adequate protection funds held by Trustee Leavitt would be turned over to Fannie Mae. However, now that Debtors had converted to chapter 7, the Code directed that the money revert back to Debtors. Nonetheless, argued counsel, Debtors had been promising the funds to Fannie Mae since August 2011 to obtain continuances of the motion and a loan modification, and Fannie Mae wanted the funds that had been set aside for its benefit.

Upon hearing counsels' arguments, the bankruptcy court ruled

that it was not considering Debtors' oral objection because they had not filed a written opposition. The court further ruled that it was terminating the stay with respect to Fannie Mae's foreclosure rights, but the disbursement matter would be continued for thirty days. On April 11, 2012, the bankruptcy court entered an order terminating the automatic stay but requiring that the funds held by Trustee Leavitt not be disbursed until further order of the court.

The continued hearing on the disbursement matter was held on May 2, 2012. Debtors again did not file an opposition prior to the hearing. Counsel appeared for Debtors, Fannie Mae and Trustee Leavitt. Fannie Mae's counsel requested that the court order Trustee Leavitt to turn over to Fannie Mae the approximate $36,000 she was holding in adequate protection funds, less Trustee Leavitt's fees. Debtors' counsel acknowledged that he did not file an opposition, but he nonetheless objected to Fannie Mae's request because he argued § 1326 required the funds to be turned over to Debtors. Although noting that Fannie Mae had not filed a separate motion to compel Trustee Leavitt to turn over the funds, the court inquired whether David A. Rosenberg, the chapter 7 trustee ("Trustee Rosenberg"), had received notice of the motion and whether any party had filed an opposition. Upon being informed that Trustee Rosenberg was noticed and that no opposition had been filed, the court granted the motion.

On May 9, 2012, the bankruptcy court entered an order directing that the funds held by Trustee Leavitt in the approximate sum of $36,000, less her fees, be disbursed to Fannie Mae ("Disbursement Order").

-8-

## C. Debtors' motion for reconsideration

Debtors filed a timely motion to reconsider ("Reconsideration Motion") on May 18, 2012, thereby tolling the appeal time of the Disbursement Order. Debtors argued that even though the Second Stay Relief Motion was asking for the additional relief of turnover of the funds, their counsel had inadvertently not filed an opposition to Fannie Mae's Second Stay Relief Motion because Debtors had decided to surrender the residence.[6] While acknowledging that the local rules authorized the bankruptcy court to not consider their oral argument in the absence of a written opposition, Debtors contended that their failure to file an opposition was excusable under Civil Rule 60(b)(1) due to their counsel's negligence. Debtors also argued that § 1326(a)(2) directs a trustee to immediately return to the debtor all funds in the trustee's possession upon conversion or dismissal of a chapter 13 case, and their admitted failure to file an opposition should not result in the manifestly unjust result of Fannie Mae receiving both the residence and $35,000 of Debtors' money.[7]

Trustee Rosenberg opposed the Reconsideration Motion,

---

[6] Although Debtors' counsel argued that the residence was being surrendered, their amended statement of intention, a copy of which we obtained from the bankruptcy court's electronic docket, stated that they planned to retain the residence. In re E.R. Fegert, Inc., 887 F.2d at 957-58; In re Atwood, 293 B.R. at 233 n.9.

[7] On course, there is another way of looking at this situation. Even if the "under water" residence ultimately is sold at a foreclosure sale (and at oral argument, it was reported that the Debtors still were living in the residence), it is not necessarily unjust that the Debtors be required to pay approximately $35,000 rent for the period that they occupied the residence when unpaid maintenance payments in excess of $48,000 accrued.

-9-

contending that even though he sympathized with Debtors' frustrations and recognized their monetary loss, he did not consider it appropriate or reasonable for Debtors' counsel to make this request for relief now, especially since he had not provided any legitimate reason for reconsideration. Specifically, Trustee Rosenberg argued that Debtors' failure to file an opposition was not excusable, particularly since he told Debtors and their counsel at the § 341(a) meeting of creditors that Fannie Mae's motion was seeking the funds held by Trustee Leavitt, which should rightfully go to Debtors under § 348, and that if Debtors failed to object, they stood to lose out on a substantial sum of money. However, despite his warnings, Debtors' attorney failed to file an opposition even though he had opportunities to do so before each hearing on the Second Stay Relief Motion. Nonetheless, argued Trustee Rosenberg, Debtors had a remedy, as they could sue their attorney's insurance carrier for malpractice given his admission of negligence.

Fannie Mae also opposed the Reconsideration Motion, contending that Debtors could not support a claim under Civil Rule 60(b)(1) for mistake, inadvertence, surprise or excusable neglect because they were given proper notice of the Second Stay Relief Motion and two hearings were held to consider it, yet they admittedly chose not to file an opposition because they intended to surrender the residence. Fannie Mae further argued that the funds held by Trustee Leavitt rightfully belonged to Fannie Mae as a result of the parties' negotiations and, in any event, payment of the funds would not cure Debtors' postpetition delinquency of $48,913.28.

-10-

After a hearing on June 20, 2012, the bankruptcy court entered an order denying Debtors' Reconsideration Motion on July 18, 2012 ("Reconsideration Order"). In reviewing the four factors under <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 385 (1993), the court found that Debtors' failure to file a written opposition to the Second Stay Relief Motion did not constitute excusable neglect. Specifically, the court noted that Local Rule 9014 clearly states that a written opposition must be filed at least 14 days before the hearing, or the court can refuse to hear the opposing party's arguments and rule against that party. Considering that this warning was conspicuously stated in Fannie Mae's notice of hearing, the court found that Debtors' counsel's failure to recognize and address the potential consequence of not complying with Local Rule 9014 was not excusable; Debtors should have at least filed a limited opposition, but they consciously chose not to file anything.

The court also rejected Debtors' alternative theory for relief under Civil Rule 60(b)(6), reasoning that clause (6) and the preceding clauses under Civil Rule 60(b) are mutually exclusive, and a motion brought under clause (6) must be for some reason other than the five reasons preceding it. Therefore, since Debtors had asserted excusable neglect under Civil Rule 60(b)(1) as a basis for relief, they could not also claim relief under Civil Rule 60(b)(6).

Finally, although relegated to a footnote, the court noted that Debtors' reliance on § 1326(a)(2) that funds held by a trustee must be turned over to the debtor upon conversion was misplaced because that provision applies only when a plan has <u>not</u>

been confirmed.  In the case of a confirmed chapter 13 plan, as in the Debtors's case, § 348(f) rather than § 1326(a)(2) applies. Section 348(f) states that if the funds held by Trustee Leavitt consisted of Debtors' postpetition earnings or other property acquired postpetition (no such evidence had been submitted by Debtors), such proceeds were not property of the estate upon conversion and belonged to Debtors.  Further, noted the court, once Debtors' case was converted to chapter 7, § 348(e) and Rule 1019(4) terminated Trustee Leavitt's services and her authority to distribute funds, and any non-estate property she held generally was to be turned over to Trustee Rosenberg.

Debtors timely appealed the Disbursement Order and Reconsideration Order on July 23, 2012.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G).  We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.   Did the bankruptcy court abuse its discretion by relying on Local Rule 9014 to disregard Debtors' oral opposition to the Second Stay Relief Motion on the basis that Debtors failed to file a written opposition?

2.   Did the bankruptcy court abuse it discretion in entering the Disbursement Order based on Debtors' failure to file an opposition to the Second Stay Relief Order?

3.   Did the bankruptcy court abuse its discretion in denying the Reconsideration Motion?

## IV. STANDARDS OF REVIEW

We review issues of law, including interpretation of the

-12-

Bankruptcy Code and Rules of Procedure, de novo and findings of fact for clear error. Bunyin v. United States (In re Bunyin), 354 F.3d 1149, 1150 (9th Cir. 2004); Schook v. CBIC (In re Schook), 278 B.R. 815, 820 (9th Cir. BAP 2002).

A court's interpretation and application of a local rule is reviewed for abuse of discretion. United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009). We review orders granting relief from the automatic stay for abuse of discretion. Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 919 (9th Cir. BAP 2009). The bankruptcy court's denial of a motion for reconsideration is reviewed for an abuse of discretion. OneCast Media, Inc. v. James (In re OneCast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**A. The bankruptcy court did not abuse its discretion by relying on its local rules to not consider Debtors' oral opposition to the Second Stay Relief Motion.**

Debtors do not challenge the April 4, 2012 order granting Fannie Mae relief from stay to proceed with its foreclosure rights against the residence. In fact, they concede that issue is moot since they received a discharge on May 30, 2012. See § 362(c)(2)(C). Debtors challenge only the Disbursement Order entered one month later directing that the funds held by Trustee Leavitt be turned over to Fannie Mae.

Motions for relief from the stay are contested matters. See

-13-

Rules 4001(a) and 9014(a). Debtors contend on appeal that a written opposition to the Second Stay Relief Motion was not necessary under Rule 9014 or Local Rule 9014(d)(3), and that the bankruptcy court failed to properly apply these rules by refusing to consider their oral opposition based on the lack of a written opposition. Debtors did not raise this issue before the bankruptcy court. In fact, their Reconsideration Motion acknowledged that the local rules authorized the bankruptcy court to not consider their oral argument in the absence of a written opposition.

Generally, we will not consider arguments raised for the first time on appeal. See Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999). However, even if we did consider Debtors' argument here, we disagree with Debtors. Rule 9014(a) states:

> In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise.

While we agree that no written response is generally required by Rule 9014(a), the bankruptcy court may direct otherwise. The Bankruptcy Court for the District of Nevada has directed otherwise in its local rules.[8] Pursuant to Local Rules 9014(b) and (d)(1), if a party opposes the relief requested in a contested motion and fails to file a written response, the bankruptcy court may refuse to allow the party to speak at the scheduled hearing and rule

---

[8] The Bankruptcy Court for the District of Nevada promulgated new local rules effective on January 1, 2013. The local rules in effect prior to the January 1, 2013 govern this appeal.

-14-

against the party without formally calling the matter at the hearing.[9] Therefore, while Debtors were not required to file a response to the Second Stay Relief Motion under Rule 9014(a), they were mandatorily required to file one (along with supporting affidavits) under Local Rules 9014(b) and (d)(1)[10] if they wanted

[9] Local Rule 9014(b) states:

    (b) <u>Notice of hearing and service of motion and notice.</u>
      (1) The movant must obtain a hearing date, and the notice of hearing must be filed with the motion and must, in addition to the requirements of Fed. R. Bankr. P. 2002(c), include the following:
        (A) The date, time, and place of the hearing;
        (B) A brief description of the relief sought;
        (C) A statement of the time for filing and serving objections or oppositions in accordance with LR 9014(d); and,
          This statement:
        "If you object to the relief requested, you *must* file a **WRITTEN** response to this pleading with the court. You *must* also serve your written response on the person who sent you this notice.
        If you do not file a written response with the court, or if you do not serve your written response on the person who sent you this notice, then:
           • The court may *refuse to allow you to speak* at the scheduled hearing; and,
           • The court may *rule against you* without formally calling the matter at the hearing."
        (Emphasis in original).

Further, Local Rule 9014(d)(1) states:

    (d) <u>Opposition, response, and reply.</u>
    (1) Except as set out in subsection (3) below, any opposition to a motion must be filed, and service of the opposition must be completed on the movant, no later than fourteen (14) days preceding the hearing date for the motion. The opposition must set forth all relevant facts and any relevant legal authority. An opposition must be supported by affidavits or declarations that conform to the provisions of subsection (c) of this rule.

It is undisputed that Fannie Mae's notice of hearing for the Second Stay Relief Motion complied with these local rules.

[10] In the local rules in effect prior to January 1, 2013, two
(continued...)

-15-

their opposition considered or face the consequences of the bankruptcy court rejecting their oral opposition and ruling against them.

Debtors also attempt to argue that the Second Stay Relief Motion was subject to Local Rule 9014(d)(3), not (d)(1), and therefore no written opposition was required.[11] Local Rule 9014(d)(3) provides exceptions to the application of Local Rule 9014(d)(1). However, Debtors have failed to explain why (d)(3) applies here and not (d)(1). The only exception that could possibly apply here under Local Rule 9014(d)(3) is (C) - motions or contested matters for which the court has set a separate briefing schedule either in open court or by separate order. The initial hearing on the Second Stay Relief Motion was scheduled for, and took place on, April 4, 2012. No "separate briefing schedule" was ever ordered by the court in open court or by separate order. The disbursement matter was then continued to May 2, 2012. Again, no "separate briefing schedule" was ordered by the court. Even if the continuance could somehow be construed

---

[10](...continued)
subparagraphs were identified as (c). However, Appellant, in his opening brief, correctly refers to the second subparagraph (c) as (d). This designation is consistent with the January 1, 2013 local rules.

[11] Local Rule 9014(d)(3) states:

(3) Subsections (d)(1) and (2) do not apply to:
(A) Motions for summary judgment brought in any adversary proceeding;
(B) Motions for which an order shortening the time for the hearing date has been obtained; and,
(C) Motions or contested matters for which the court has set a separate briefing schedule either in open court or by separate order.

as a separate briefing schedule, Local Rule 9014(d)(3) still does not eliminate the consequences of failing to file and serve a written opposition as set forth in Local Rule 9014(b)(1).

Both the Ninth Circuit and this Panel have confirmed that "courts have broad discretion to interpret their local rules. Only in rare cases will an appellate court question the exercise of discretion in connection with the application of the local rules." Qualls by and Through Qualls v. Blue Cross, 22 F.3d 839, 842 (9th Cir. 1994); Katz v. Pike (In re Pike), 243 B.R. 66, 69 (9th Cir. BAP 1999)("The bankruptcy court has broad discretion to apply its local rules."). This is not a "rare case" in which we question the bankruptcy court's discretion.

Accordingly, we conclude that the bankruptcy court, consistent with its local rules, did not abuse its discretion by not considering Debtors' oral opposition to the Second Stay Relief Motion based on their failure to file and serve a written opposition.

**B. The bankruptcy court did not abuse its discretion by granting Fannie Mae relief on the sole basis that Debtors failed to file an opposition to the Second Stay Relief Motion.**

"Local rules have the 'force of law' and are binding upon the parties and upon the court . . . ." Prof'l Programs Grp. v. Dep't of Commerce, 29 F.3d 1349, 1353 (9th Cir. 1994). "[J]udges must adhere to their court's local rules . . . ." Alliance of Nonprofits for Ins., Risk Retention Group v. Kipper, 712 F.3d 1316, 1327 (9th Cir. 2013), citing In re Corrinet, 645 F.3d 1141, 1146 (9th Cir. 2011).

The bankruptcy court granted the Disbursement Order because Debtors failed to file any written opposition to the Second Stay

-17-

Relief Motion after having the opportunity to do so prior to two scheduled hearings held over approximately two months. At the first scheduled hearing on April 4, 2012, Debtors' counsel stated, "I apologize for not filing a response. I don't actually have an excuse, but I'm not sure it's entirely appropriate for a motion for relief to request monetary relief." Hr'g Tr. (April 4, 2012) 4:13-16. The bankruptcy court responded, "Well, the cash would be part of their collateral, I suspect . . . ." Id. 4:20-21. Later, the bankruptcy court stated, "Well, with respect to the debtors' objection, I'm not going to consider that because they didn't file an opposition." Id. 5:24-6:1. At the conclusion of the April 4 hearing, the bankruptcy court stated, "But I'll enter an order . . . terminating the stay as to your ability to foreclose on the property and continue this for a status hearing in 30 days . . . so that [the bankruptcy court] can hear the issue of or the resolution of the money that was held by the Chapter 13 Trustee." Id. 7:2-6. At the second scheduled hearing held on May 2, 2012, the bankruptcy court inquired as to whether any opposition had been filed concerning the amount and who should receive the money. Fannie Mae's counsel informed the bankruptcy court that no opposition had been filed. Debtors' counsel concurred by stating, "Yeah. There was no timely opposition filed." Hr'g Tr. (May 2, 2012) 3:24-25. Given the conversion from a chapter 13 to chapter 7 case, the bankruptcy court inquired if the chapter 7 trustee had notice and upon confirming adequate notice, the following discussion occurred:

        THE COURT: Well, there is no opposition on file. Was
        there one even filed at all?
        [FANNIE MAE'S COUNSEL]: No.

-18-

THE COURT: None at all. All Right. So I'll grant the motion.

Id. 5:22-6:1.

Debtors contend that as a motion for relief from stay is a summary proceeding such a motion should not incorporate an additional request for a monetary award. In support of their position they refer to Biggs v. Stovin (In re Luz Int'l, Ltd.), 219 B.R. 837, 842 (9th Cir. 1998) (given the expedited nature of motion, merits of claims, defenses or counterclaims should not be adjudicated). Debtors' reliance on this case however overlooks the basic fact that in In re Luz Int'l, Ltd., the "trustee filed an opposition to the motion." Id. at 841. For this reason, In re Luz Int'l, Ltd. is distinguishable. Debtors never filed any written opposition to the Second Stay Relief Motion.

Consistent with the bankruptcy court's Local Rule 9014(b)(1) and given Debtor's repeated failure to file a written opposition to Fannie Mae's Second Stay Relief Motion and the broad discretion the bankruptcy court has in applying its local rules, the bankruptcy court, in this instance, did not abuse its discretion in granting the Disbursement Order. See Qualls by and Through Qualls, 22 F.3d at 842; In re Pike, 243 B.R. at 69.

**C. The bankruptcy court did not abuse its discretion in denying the Reconsideration Motion.**

Debtors in their Reconsideration Motion relied upon Civil Rule 60(b)(1), incorporated in Fed. R. Bankr. P. 9024, in asserting that their failure to file any written opposition to the Second Stay Relief Motion arose from their counsel's negligence and constituted excusable neglect. Debtors further asserted that

-19-

if Rule 60(b)(1) did not apply then Rule 60(b)(6)(any other reason justifies relief) applies.[12]  Alternatively, Debtors asserted that § 1326(a)(2) required disbursement of the retained payments to Debtors.[13]  The bankruptcy court thoughtfully reviewed and analyzed Debtors' assertions in its Reconsideration Order.

The bankruptcy court properly applied the four factors adopted in Pioneer Inv. Servs. Co. in considering excusable neglect under Civil Rule 60(b)(1).[14]  As to factors one and two, the bankruptcy court found that they favored the debtors because "requiring a party to litigate the merits of its motion generally does not create a significant risk of prejudice" and Debtors' prompt Reconsideration Motion minimized delay and impact on the judicial process.  Reconsideration Order, p. 5-6.  As to factors three and four, the bankruptcy court found the Debtors should have promptly filed a written opposition to the Second Stay Relief

---

[12] Civil Rule 60, in part, provides:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding.  On motion and just terms, the court may relieve a party . . . from a final . . . order . . . for the following reasons:
>         (1) mistake . . ., or excusable neglect;
>                   * * *
>         (6) any other reason that justifies relief.

[13] Section 1326(a)(2) provides, in part: "If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable.  If a plan is not confirmed, the trustee shall return any such payments not previously paid . . . to debtor . . . ."

[14] The four factors are:  "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  Pioneer Inv. Servs. Co., 507 U.S. at 395.

-20-

Motion and failed to prove that "their failure to file a written opposition to the [Second Stay Relief Motion] constitutes excusable neglect." Reconsideration Order, p. 7. Local Rule 9014(b)(1) mandates that a written response to a pleading be filed, and if that response is not filed, an adverse ruling may be entered. Debtors' counsel acknowledged at the hearings that he had notice of the Second Stay Relief Motion and apologized to the court for not filing a response and acknowledged that he did not have an excuse. On these facts and given the principles discussed in Pioneer Inv. Servs. Co., 507 U.S. at 395-96, the bankruptcy court did not err in finding that excusable neglect did not apply.

In Debtors' opening appellant brief, they no longer raise the excusable neglect factor of Civil Rule 60(b)(1) or that some other reason justifies relief under (b)(6), except to state the bankruptcy court denied the Reconsideration Motion for Debtors' failure to file a response, finding an absence of excusable neglect. As Debtors have not further raised or argued Civil Rule 60(b)(1) or (b)(6), the Panel deems Debtors to have waived any issues associated with Civil Rule 60. See Jodoin v. Samayoa (In re Jodoin), 209 B.R. 132, 143 (9th Cir. BAP 1997).

Also, Debtors no longer argue that the wrong Code section, § 1326(a)(2) applies, as they did in the Reconsideration Motion. Now, they argue on appeal that § 348(f) applies, an argument that they did not make to the bankruptcy court. At this point, that argument makes its appearance too late in the game. The Panel will not consider an argument involving § 348(f) that was not raised by Debtor before the bankruptcy court, either orally or in a written opposition. See In re E.R. Fegert, Inc., 887 F.2d at

-21-

957.

Debtors' failure to file a written response to the Second Stay Relief Motion after receiving conspicuous notice to file a response allowed the bankruptcy court, in its discretion, to refuse Debtors the opportunity to speak at any scheduled hearing and to have an adverse ruling entered against them. As the local rules "have the 'force of law' and are binding upon the parties and upon the court, . . . ," Prof'l Programs Grp., 29 F.3d at 1353, and as the Debtors failed to raise any viable argument in support of their Reconsideration Motion, the bankruptcy court did not abuse its discretion in denying Debtors' Reconsideration Motion.

## VI. CONCLUSION

Based on the foregoing reasons, we AFFIRM the Disbursement Order and the Reconsideration Order.